Arthur D. Grossman (ADG-9237)
Robert J. Rohrberger (RJR-1918)
David Ward (DW-7669)
Fox & Fox LLP
70 South Orange Avenue
Livingston, New Jersey 07039

Lawrence Rosenthal (LR-9526)
Matthew W. Siegal (MWS-7467)
Angie M. Hankins (AMH-1367)
STROOCK & STROOCK & LAVAN LLP
Attorneys for Plaintiff
Fuji Photo Film Co., Ltd.

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

------------------------------------------------------------ X
                                                             )    Civil Action No.
FUJI PHOTO FILM CO., LTD.                                    )
                                    Plaintiff,               )
                                                             )
                                                             )
                        v.                                   )
                                                             )
JACK C. BENUN                                                )
RIBI TECH PRODUCTS LLC,                                      )
POLYTECH ENTERPRISES LTD, and                               )
POLYTECH (SHENZHEN) CAMERA CO. LTD,                         )
                                                             )
                                    Defendants.              )
                                                             )
------------------------------------------------------------ X

## COMPLAINT WITH DEMAND FOR JURY TRIAL

Plaintiff, Fuji Photo Film Co., Ltd. complaining of the Defendants herein, alleges as

follows:

## THE PARTIES

1.  Plaintiff Fuji Photo Film Co., Ltd. ("Fuji" or "Plaintiff") is a business entity

organized and existing under the laws of Japan.  Fuji has its principal place of business at 26-30

Nishiazabu 2-chome, Minato-ku, Tokyo 106-8620 Japan.

2.   Defendant Jack C. Benun ("Benun") is an individual residing at 80 Wickapecko Drive, Ocean, New Jersey  07712, and on information and belief, Benun is the Chief Executive Officer and Manager of Defendant Ribi Tech Products LLC.

3.   Defendant Ribi Tech Products LLC ("Ribi") is a limited liability corporation organized under the laws of the State of New Jersey and its registered agent is Corporation Service Company located at 830 Bear Tavern Road, West Trenton, New Jersey 08628.

4.   On information and belief, Ribi's principal place of business is 80 Wickapecko Drive, Ocean, New Jersey 07712.  On information and belief, this is the same address as Benun's residence.

5.   Defendant Polytech Enterprises Ltd. ("Polytech HK") is a Hong Kong corporation with its principal place of business at Unit D 5/F, Young Ya Industrial Bldg., 381-389 Shai Tsui Road, Tsuen Wan, N.T. Hong Kong.

6.   Defendant Polytech (Shenzhen) Camera Co. Ltd. ("Polytech China") is a subsidiary of Polytech HK with its principal place of business at 6-7 Floor, Building B, Tengfei Industrial Building, Futian Tax-free Area, Futian District, Shenzhen City, Guangdong Province, Peoples Republic of China.

7.   Defendants Polytech HK and Polytech China are collectively referred to as "Polytech" herein.

8.   Defendants Ribi, Polytech and Benun are collectively referred to as "Defendants."

### JURISDICTION AND VENUE

9.   This Court has subject matter jurisdiction of this action under 28 U.S.C. §§1331 and 35 U.S.C. §271 et seq.

10. This Court has personal jurisdiction over Defendant Ribi because of its incorporation and presence in the State of New Jersey, its sufficient contacts with the State of New Jersey, and/or its committing infringement and other tortious acts in the State of New Jersey and in this judicial district.  Venue in the District of New Jersey is proper under 28 U.S.C. §§1391 and 1400.

11. This Court has personal jurisdiction over Defendant Polytech HK because of its presence in the State of New Jersey, its sufficient contacts with the State of New Jersey, and/or its committing infringement and other tortious acts in the State of New Jersey and this judicial district, including shipping infringing goods into New Jersey and selling infringing goods to an entity located in New Jersey.  Venue in the District of New Jersey is proper under 28 U.S.C. §§1391 and 1400.

12. This Court has personal jurisdiction over Defendant Polytech China because of its presence in the State of New Jersey, its sufficient contacts with the State of New Jersey, and/or its committing infringement and other tortious acts in the State of New Jersey and in this judicial district, including making infringing goods knowing they are to be shipped into the state of New Jersey, shipping infringing goods into New Jersey, and/or selling infringing goods to an entity located in New Jersey.  Venue in the District of New Jersey is proper under 28 U.S.C. §§1391 and 1400.

13. This Court has personal jurisdiction over Defendant Benun because of his residence within the State of New Jersey and his committing the tort of inducing infringement within the State of New Jersey.  Venue in the District of New Jersey is proper under 28 U.S.C. §§1391 and 1400.

## FACTS COMMON TO THE COUNTS

14. Fuji, by and through its various wholly owned direct and indirect subsidiaries in the United States, is one of the nation's leading providers of imaging and information products.

15. Fuji pioneered the development of lens fitted film packages ("LFFPs"), commonly referred to as one-time-use cameras, single use cameras or disposable cameras, and after the expenditure of substantial time, money and effort, introduced the first commercially successful LFFP in Japan in 1986.

16. LFFPs are relatively inexpensive cameras that are preloaded with film unwound from the film cartridge so that, after pictures have been taken, all of the film is wound back into the film cartridge.

17. Since 1986, Fuji has expended substantial time, money and effort to improve on the original idea and now produces, and has produced over the years, extremely high quality LFFPs manufactured to exacting quality standards. From the introduction of the first products covered by one or more of the Subject Patents (described infra) in 1986, through the end of 2003, Fuji and its subsidiaries have sold more than a billion of such LFFPs worldwide, including huge quantities in the United States, and substantial quantities in this District.

18. Fuji has invested substantial time, money and effort over the years in research and development activities in the field of LFFPs, and has obtained a substantial patent portfolio in the United States and elsewhere, including the "Subject Patents," identified below, in order to protect its investment and the fruits of its research and development.

19. Fuji is the owner by right and assignment of the following patents that are described briefly as follows:

4

a)   U.S. Patent No. 4,833,495 ("the '495 patent"), which generally covers a LFFP with projections for promoting smooth, scratch free unrolling of film during use;

b)   U.S. Patent No. 4,855,774 ("the '774 patent"), which generally covers a LFFP with a plurality of ribs for promoting smooth, scratch free unrolling of film and other features;

c)   U.S. Patent No. 4,884,087 ("the '087 patent"), which generally covers a LFFP having a spool that promotes film loading, and certain assembly features;

d)   U.S. Patent No. 4,954,857 ("the '857 patent"), which generally covers (i) a LFFP that has a roll of unexposed film having no inner spool; (ii) LFFP film advancement features; and (iii) a spool in a film roll to promote film loading;

e)   U.S. Patent No. 4,972,649 ("the '649 patent"), which generally covers methods of assembling a LFFP with unexposed film removed from a film cartridge and wound in a roll to promote ease of use;

f)   U.S. Patent No. 5,063,400 ("the '400 patent"), which generally covers a LFFP with a bottom lid for removing an exposed roll of film in a film cartridge to make photo processing easier;

g)   U.S. Patent No. 5,235,364 ("the '364 patent"), which generally covers a LFFP with a flash unit arranged in a specified way to promote compactness;

h)   U.S. Patent No. 5,316,111 ("the '111 patent"), which generally covers a LFFP with a wall to protect the flash or shutter button to prevent inadvertent activation;

i)   U.S. Patent No. 5,381,200 ("the '200 patent"), which generally covers a LFFP with a shutter blade having a crank shape to promote a thinner design;

j)      U.S. Patent No. 5,408,288 ("the '288 patent"), which generally covers a LFFP with a winding knob that has knurled teeth to mesh with the knurled teeth of a film cartridge to maximize the use of the film when the knob is engaged with the cartridge;

k)      U.S. Patent No. 5,436,685 ("the '685 patent"), which generally covers a LFFP with a removable mechanical unit to facilitate recycling of spent LFFPs and the remanufacture thereof;

l)      U.S. Patent No. Re 34,168 ("the '168 patent"), which generally covers a LFFP in which internal parts project into the thickness of the front cover to promote a thinner shape;

m)      U.S. Patent No. Des. 345,750 ("the 'D750 patent"), which covers the ornamental features of a box-shaped LFFP without flash;

n)      U.S. Patent No. Des. 356,101 ("the 'D101 patent"), which covers the ornamental features of a box-shaped LFFP with flash;

o)      U.S. Patent No. Des. 372,722 ("the 'D722 patent"), which covers the ornamental features of a LFFP with a round-shaped flash button area.

The patents listed in subparagraphs a-o will be referred to herein collectively as the "Subject Patents."

20. The patent terms for some of the Subject Patents are dwindling as many of these patents expire in 2007. In effect, the Subject Patents are wasting assets.

21. Fuji is a world-recognized innovator, manufacturer and distributor of quality LFFP products throughout the United States and the world. The most popular types of LFFPs are

6

daylight (without flash) and flash LFFPs, although LFFPs with telephoto and panoramic lenses, and configured for underwater use are sold.

22. LFFPs are commonly sold at discount stores, convenience stores, drug stores, supermarkets, photo shops and department stores, as well as amusement parks, zoos, theme parks and resorts worldwide. LFFPs are also used in a market segment known as the premium, or incentive market, wherein the packaging of the LFFPs is used as a promotional tool to market a myriad of products. In 2003 alone, 218 million LFFPs were sold in the United Sates, this is more than five times the amount of LFFPs sold in 1993.

23. In ordinary use, the typical consumer shoots the pre-loaded roll of film and then, in accordance with instructions on the package and what has become an industry practice, turns the entire LFFP in to a film processor, which does not return the empty camera body ("shell") to the consumer. Only the developed pictures and negatives are returned to the consumer. Accordingly, the ordinary consumer considers these products as one-time-use or disposable cameras.

24. Fuji's LFFPs are a great commercial success. Fuji has licensed the Subject Patents to Eastman Kodak Company ("Kodak"), Konica Corporation ("Konica"), Concord Camera Corp. ("Concord"), Unique Photo Corp. ("Unique"), and AGFA-Gevaert A.G. ("AGFA"). At least Kodak, Konica and Concord also have had great commercial success in the sale of licensed LFFPs.

25. Fuji's sales of LFFPs in the United States are made by its indirectly wholly-owned subsidiary Fuji Photo Film U.S.A., Inc., located at 200 Summit Lake Drive, Valhalla, New York 10523. A substantial portion of the Fuji LFFPs now sold in the United States are made using domestic components (including shells and film) and imported components (principally the flash

units) by another Fuji indirectly wholly-owned subsidiary, Fuji Photo Film, Inc., in a group of plants in Greenwood, South Carolina. Other Fuji products are also manufactured in Greenwood, South Carolina.

## THE INFRINGING PRODUCTS AT ISSUE

26. The infringing LFFPs at issue are LFFPs that typically are made in Asia by breaking open used shells of LFFPs originally made by others, such as Fuji, Kodak, Konica, Concord and Achiever Industries Ltd. and then by adding new parts and modifying existing parts, turning the spent, broken open LFFPs into new LFFP products.

27. In an opinion summarized below, the Court of Appeals for the Federal Circuit (the "Federal Circuit") adopted the neutral term "refurbished" to describe LFFPs that were either repaired in a noninfringing manner or reconstructed in an infringing manner.

28. On information and belief, Polytech HK was formed in 2002 by a then employee of Jazz Photo (Hong Kong) Ltd. ("Jazz HK"), a Hong Kong subsidiary of a United States importer and distributor of infringing LFFPs, Jazz Photo Corp. ("Jazz US").

29. On information and belief, from 2002 through early 2003, Polytech HK served as an intermediary between shell collectors in the United States and Jazz HK, and possibly factories in China. Polytech HK was organized at least with the help of Jazz and Benun, if not by Benun himself.

30. From early 2003 through March 1, 2005, when Jazz US was ordered by a Bankruptcy Judge of this District (the Honorable Morris Stern) to cease normal course sales and liquidate its assets, Polytech HK has refurbished LFFPs and sold them to Jazz US for importation into and sale in the United States.

31. Fuji has engaged in a long and protracted legal battle with Jazz US, Jazz HK and Defendant Benun, their founder, over Jazz US' infringing refurbished LFFPs. As summarized below, Jazz US was found to infringe the Subject Patents four times (twice by the United States International Trade Commission (the "Commission"), once by this Court, and once by the U.S. Court of International Trade ("CIT")). Two of the decisions have been affirmed by the Federal Circuit, and the other two are on appeal. Defendant Benun was found personally liable for inducing infringement by Jazz US and Jazz HK's (collectively "Jazz"), willful infringement, and bad faith infringement by this Court and the Commission.

32. In February 2003, this Court (the Hon. Faith S. Hochberg presiding) awarded a judgment of approximately $30 million against Jazz, and $28.5 million dollars against Defendant Benun, jointly and severally. This caused Jazz US and Benun to file for bankruptcy under Chapter 11 of the bankruptcy laws in 2003. In re Jazz Photo Corp., Case No. 03-26556 (MS); In re Jack C. Benun, Case No. 03-32195 (MS).

33. On March 11, 2005, Benun's Chapter 11 bankruptcy was converted to Chapter 7.

34. On February 18, 2005, the Bankruptcy Court ordered the liquidation of Jazz pursuant to a settlement of litigation with a third party that brought money into the Jazz US estate. Jazz US ceased doing business on March 1, 2005.

35. Jazz US' LFFPs were sold with new packaging alongside the LFFPs of Fuji and its licensees. Jazz US offered for sale in the United States and imported into and sold in the United States refurbished LFFPs at least under the trademarks "Jazz", "Wedding Memories" and "Bell & Howell" and under the trade names and trademarks of its customers.

36. On information and belief, as part of Jazz US' liquidation in bankruptcy, Defendant Ribi seeks to acquire Jazz US' inventory of refurbished LFFPs, including LFFPs denied entry by

9

United States Customs and Border Protection ("Customs") on the grounds that they infringe the Subject Patents and violate the Commission's General Exclusion Order.

37. On information and belief, Defendant Ribi plans to challenge Customs' determinations and sell and/or offer the refurbished LFFPs for sale in the United States. On information and belief, at least a portion of these refurbished LFFPs, which cannot be segregated from the others, infringe one or more claims of the Subject Patents.

38. On information and belief, Ribi was organized by the wife and children of Benun, who owned a large majority of the stock of Jazz.

39. On information and belief, Benun's wife owns 40% of Ribi and his four children each own 10% of Ribi.

40. On information and belief, Benun is the Chief Executive Officer and Manager of Ribi and controls the actions of Ribi. Ribi is aware of the Subject Patents and the past findings of infringement.

41. On information and belief, in addition to the Jazz US inventory that Defendant Ribi is trying to purchase, Ribi is purchasing or intends to purchase refurbished LFFPs from Polytech for importation into and sale in the United States.

42. On information and belief, all of these LFFPs are within the scope of the claims of the Subject Patents.

43. Jazz and Defendant Benun were aware of the Subject Patents before starting to sell (and offer for sale) Jazz's infringing LFFPs in 1995, were denied a license by Fuji in 1996, and received formal written notice of the Subject Patents at least by the complaint (described below) filed by Fuji with the Commission and served in March 1998.

44. Defendant Benun is the founder of Jazz and has exercised control over Jazz since its inception in 1995.  In April 1997, in connection with an unsuccessful attempt to go public, Defendant Benun resigned his positions as a director and officer of Jazz US because Benun had been banned for life from holding office in a public company of reason of his misappropriation of $150,000 from his former public company.  At that time, Benun assumed the position of "consultant" but retained effective control of Jazz, especially in connection with the sourcing of product.  In July 2003, to satisfy objections in the Jazz US bankruptcy proceeding regarding his compensation, Defendant Benun assumed the office of Chief Operating Officer ("COO") of Jazz US, a position he resigned on March 4, 2005.

45. From 1997 through 2001 Jazz paid Benun over $11 million in direct payments and loans, more than four times the company's retained earnings during the period.

46. Benun claims none of that $11 million is left, but his Chapter 7 trustee has commenced actions in the Bankruptcy Court to recover money wrongfully transferred to his consulting company, his wife and daughters, and others.

47. On information and belief, Defendant Benun is a moving force in the formation of Ribi, as he was in the organization of Jazz and Polytech.

48. On information and belief, Benun will be in a position to control the activities of Ribi, including product selection, product sourcing, and sales.

## PROCEDURAL HISTORY

### The Initial ITC Decision

49. On March 25, 1998, on Fuji's complaint, the Commission instituted Investigation No. 337-TA-406 to determine whether several respondents, including Jazz US, were violating Section 337 of the Tariff Act of 1930, 19 U.S.C. § 1337, by committing acts of unfair

competition in international trade.  Fuji alleged that the respondents were engaging in the sale and importation of LFFPs that infringed at least one of the Subject Patents.

50. An Administrative Law Judge (the "ALJ") conducted a hearing from November 2 through November 13, 1998 and issued his Final and Initial Recommended Determinations ("ID") on February 24, 1999 finding that, inter alia, Jazz US had infringed each of the Subject Patents except the '288 patent and the three design patents.  Aside from a rejected validity argument as to one of the Subject Patents, Jazz US based its defense with regard to refurbished cameras on the affirmative defense of permissible repair.  Specifically, the ALJ found that Jazz US was infringing the following claims of the following Subject Patents:

a)   Claims 1, 5, 6, 9 and 11 of the '495 patent;

b)   Claims 14 and 15 of the '774 patent;

c)   Claims 1, 7, and 8 of the '087 patent;

d)    Claims 1, 19, and 22 of the '857 patent;

e)   Claim 1 of the '649 patent;

f)   Claims 14 and 16 of the '400 patent;

g)   Claims 1 and 11 of the '364 patent;

h)   Claim 1 of the '111 patent;

i)   Claims 1, 15, 23, and 25 of the '200 patent;

j)   Claims 1 and 28 of the '685 patent;

k)   Claims 1 and 13 of the '168 patent;

51. On June 9, 1999, the Commission adopted the ALJ's reasoning for rejecting the repair defense and found that all respondents violated Section 337 of the Tariff Act of 1930 and infringed one or more of the Subject Patents.  The Commission, however, found that the ALJ

12

relied on the wrong burden of proof, clear and convincing rather than preponderance of the evidence.  Nonetheless, the Commission considered the evidence and found that the application of the correct standard of proof did not affect the ALJ's conclusions regarding the permissible repair defense.  In part, the Commission based its decision on the findings of the ALJ that most of the respondents and their suppliers, including Jazz and its suppliers, failed to permit complete discovery of their refurbishing processes and otherwise failed to satisfy their burden of proof.  In addition, the Commission reversed the ALJ's finding of non-infringement of the design patents, but otherwise adopted the ALJ's numerous infringement and validity determinations.

52. On June 2, 1999, pursuant to 19 U.S.C. §1337(f), the Commission imposed a Cease and Desist Order against Jazz, as well as against each of 19 other domestic respondents, and a General Exclusion Order (the "Commission's Orders") applicable to all importers and manufacturers of LFFPs.

53. On June 7, 1999, Jazz US appealed the Commission's decision to the Federal Circuit. Jazz US also moved for a stay of the Commission's Orders pending appeal, which was granted on July 6, 1999.  Consequently, Jazz US (and another respondent Grandway) was permitted to import and sell infringing LFFPs while the appeal was pending.

54. On August 21, 2001, the Federal Circuit, in its Opinion and Judgment, affirmed the Commission's determination of Jazz US' infringement, but reversed in part to establish a safe harbor for non-infringing refurbishment. Jazz Photo Corp. v. U.S. Int'l Trade Comm'n, 264 F.3d 1094 (Fed. Cir. 2001) ("Jazz v. ITC").  The safe harbor, however, did not apply to Jazz US, as it did not meet the requirements of the safe harbor as later found by the Commission, the District Court, and the Federal Circuit.

55. Specifically, the Federal Circuit concluded that the accused infringer has the burden of proving the affirmative defense of permissible repair by a preponderance of the evidence and that to avoid a finding of infringement, the accused infringer must prove that its LFFPs are (1) made from used shells from LFFPs first sold in the United States (the "first sale" requirement) and (2) refurbished by a procedure "limited" to eight enumerated steps (the "permissible repair process").

56. The Federal Circuit lifted the stay and affirmed the finding of infringing reconstruction for any LFFPs that were from the shells of LFFPs not first sold in the United States, refurbished by procedures more extensive than those held to constitute repair, or whose remanufacturing procedures were withheld or insufficiently disclosed to the Commission, and held that such refurbished LFFPs remained subject to the Commission's Orders.  Accordingly, as stated above, the Commission's determination that Jazz US infringed one or more claims of the Subject Patents was affirmed.

**The District Court Judgment**

57. Shortly after the Commission Opinion issued, Fuji filed a patent infringement action in this Court against, Jazz and Defendant Benun.  This case was limited, by stipulation, to acts that occurred prior to August 21, 2001, the date the judgment in Jazz v. ITC issued.

58. After a five-week jury trial in October and November 2002, and Judge Hochberg's separate consideration of the permissible repair defense, which is a legal issue on which the jury's findings were advisory, Judge Hochberg found Jazz and Benun liable for infringement, and affirmed a damages award based in a 56 cents per LFFP reasonably royalty.  Fuji Photo Film Co., Ltd. v. Jazz Photo Corp., 249 F.Supp.2d 434, 459 (D.N.J. 2003) ("Fuji v. Jazz").

14

59. The Court, applying the two-prong test for analyzing the permissible repair defense (first sale (patent exhaustion) plus a permissible repair process) enunciated by the Federal Circuit, concluded that more than 99% of the 40,099,369 refurbished LFFPs at issue (sold from 1995 to August 21, 2001) infringed Fuji's patents. Id. at 451-52.

60. The Court also affirmed the jury's finding that Benun was liable for inducing infringement based on his control of Jazz, i.e., that he intentionally and actively caused Jazz to infringe Fuji's patents. Id. at 457-59.

61. Finally, the Court awarded Fuji almost $30 million in damages and pre-judgment interest against Jazz and about $28.5 million against Defendant Benun. This judgment was the subject of cross appeals to the Federal Circuit.

62. Fuji sought a preliminary injunction twice from this Court. The first time was immediately after the Federal Circuit decision in Jazz v. ITC. On October 9, 2001, Fuji's request was denied because "there is no irreparable harm because alternate forms of relief are available and mere delay in a government agency's ability to hear a matter does not constitute irreparable harm [a reference to the then pending enforcement proceeding in the Commission described below]" and because the Court found that Fuji had not shown "a likelihood of success regarding future cameras that have not yet been reviewed by any agency or judicial body."

63. The second time Fuji sought a permanent injunction was after the jury verdict in its favor in Fuji v. Jazz. On March 13, 2003 the Court denied Fuji's request for a permanent injunction because it was "neither 'specific in terms' nor does it describe 'in reasonable detail the acts sought to be restrained.'" The Court further noted that if the language of the injunction was narrowly tailored, an injunction would not be appropriate because: a) "Fuji voluntarily limited the scope of its infringement claims in this case to cameras sold prior to August 21, 2001" and

15

there was no evidence of the refurbishment process currently used by the Defendants; b) the Court's "Opinion as to repair/ reconstruction turned on issues of proof which may not necessarily adhere in a proceeding with a damages period beginning after August 21, 2001"; and c) "Fuji has already sought and obtained injunctive relief in the ITC Proceeding, the subject of which is Defendants' *current and ongoing* conduct."

64. In denying Fuji's second request, the Court noted that while the injunctive power of the Commission is not coextensive with that of the Court because it is limited to imports, "the existence of the ITC injunction for the most part vitiates Fuji's claim to ongoing and irreparable harm with respect to the Jazz supply chain for which evidence has been adduced in this case."

65. None of the grounds stated by Judge Hochberg for denial of an injunction now apply, at least in view of the most recent Commission decision discussed below and the ongoing liquidation of Jazz US. Specifically, Benun, who was found to be subject to the Commission's Cease and Desist Order while a consultant to Jazz US or its CEO, is no longer bound by the Commission Cease and Desist Order because of his resignation on March 4, 2004. Polytech and Ribi are not bound because they are not acting for Jazz US.

66. Jazz and Benun immediately moved for a stay of the judgment in Fuji v. Jazz pending appeal of the decision to the Federal Circuit, first to this Court and then to the Federal Circuit. Both of these stay requests were denied. The Federal Circuit denied the stay because Jazz and Benun showed "neither a strong likelihood of success nor a substantial case on its merits" entitled them to stay.

67. Until March 28, 2005, Fuji was enjoined by the Bankruptcy Court from seeking an injunction or any other relief in this Court against Benun and Jazz US, and as a practical matter

by the automatic stay of the bankruptcy law.  On that date Judge Stern, lifted his stay and the automatic stay no longer applied to Benun in view of the conversion of his case to Chapter 7.

68. Jazz and Benun appealed from this Court's decision in Fuji v. Jazz, inter alia, this Court's approval of the jury's determination of a reasonable royalty of 56 cents per LFFP. Defendant Benun appealed the finding that he induced infringement and willfully infringed the Subject Patents.  Fuji appealed, inter alia, the Court's refusal to grant a permanent injunction.

69. On January 14, 2005, the Federal Circuit affirmed this Court's decision in Fuji v. Jazz in its entirety. Fuji Photo Film Co., Ltd., v. Jazz Photo Corp., 394 F.3d 1368 (Fed. Cir. 2005). In affirming the Court's decision, the Federal Circuit found that there was sufficient evidence to support a finding that Defendant Benun possessed the intent to induce Jazz's infringement of the Subject Patents. Id. at 1377-78.  The Federal Circuit also declined to disturb the jury's finding that Defendant Benun willfully infringed Fuji's patents. Id. at 1379.  It also affirmed the 56 cent per LFFP reasonable royalty. Id. at 1378.

70. On Fuji's appeal from the Court's refusal to grant an injunction, the Federal Circuit found that the Court did not abuse its discretion because the "proofs required for determining future infringing activity are not insignificant and not amenable to a narrowly tailored order…" Id. at 1380.

71. The Federal Circuit and the Court's rationale for denying an injunction are no longer applicable.  First, the Commission has found that Jazz US and Benun engaged in post August 21, 2001 infringement of the Subject Patents.  Second, the Commission's determination that Jazz US and Benun were continuing to infringe through the December 12, 2003 hearing before the ALJ, and the fact that the Commission's Orders no longer apply to Benun and Polytech, prove that the Commission's Orders are not sufficient.  Finally, Fuji has crafted an injunction that seeks to bar

17

cameras that were found to infringe by this Court or the Commission, or cameras not colorable different therefrom, in line with the Federal Circuit precedent and consistent with the Federal Circuit's decision in Fuji v. Jazz.

**The Enforcement Proceedings (II)**

72. On September 24, 2002, the Commission instituted a second enforcement proceeding to determine whether Jazz US, Defendant Benun, and Anthony Cossentino (Jazz US' former president) violated the Commission's Orders (injunctions) after August 21, 2001 and what, if any, enforcement measures were appropriate. This proceeding was automatically stayed by Jazz US and Benun's bankruptcy proceedings. After a consent order lifting the automatic stay was entered by Judge Stern on July 30, 2003 in the bankruptcy proceedings, and after extensive discovery by both sides, an evidentiary hearing was conducted by the ALJ from December 8 through December 13, 2003.

73. On April 6, 2004, in an Enforcement Initial Determination ("EID II"), the ALJ found, inter alia, that more than eighty-four percent (84%) of the LFFPs sold by Jazz US in 2003, including those sold after the filing of the petition for bankruptcy, infringed, as did 100% of the LFFPs sold from August 21, 2001 to December 31, 2002.

74. Altogether, the ALJ found that 25,216,980 refurbished LFFPs out of 26,457,730 (95.3%) refurbished LFFPs sold by Jazz from August 21, 2001 through December 12, 2003 infringed at least one of the Subject Patents. Many of the LFFPs the ALJ found to infringe the Subject Patents were produced by Polytech.

75. On July 27, 2004, the Commission adopted the decision of the ALJ, by determining not to review the EID II on violation, including his determination that Benun and Cossentino are subject to the Commission's Cease and Desist Order applicable to Jazz US. The Commission

18

solicited written submissions from the parties to the investigation, interested parties, and interested government agencies on the specific enforcement measures recommended by the ALJ (i.e., imposition of civil penalties against Jazz US ($13.675 million), Benun ($13.675 million) and Cossentino ($154,000)).  In recommending the assessment of penalties against Defendant Benun, the ALJ found that Benun controlled Jazz US and was responsible for the selection of Jazz US products, Jazz US suppliers, Jazz US refurbishing factories, and the acquisition of used camera shells.

76. In an order of January 14, 2005, explained by an Opinion of January 24, 2005, the Commission imposed a $13.675 million civil penalty under 19 U.S.C. §1337(f)(2) against Jazz US and Benun jointly and severally (the next highest award penalty previously imposed being only $2.6 million dollars).  The Commission in its opinion expressly found that Jazz had misled Customs into permitting entry.

**The Court of International Trade**

77. Since the fall of 2004, after the Commission adopted the ALJ's determination of violation of its orders on July 27, 2004, Customs has denied entry of Jazz US' shipments of LFFPs from Polytech (except for shipments entered in error, which Customs has requested redelivery, a futile act because the LFFPs are already distributed to retailers and consumers). Jazz US has challenged Custom's detention of several contains on the basis that the cameras contained therein were noninfringing.  Those challenges have been brought before the CIT.

78. In the one case that has gone to trial involving two shipments, the CIT upheld Customs' detention of portions of several containers on the grounds that they contain infringing cameras, but reversed as to the majority of the LFFPs. Fuji was denied the right to participate as a party in this proceeding or even to see most of the evidence, which was designated

confidential. The United States did not offer an affirmative case. Jazz US, the United States, and Fuji are appealing that decision to the Federal Circuit.

79. Evidence recovered after the closed trial in the CIT reveals that portions of the containers released to Jazz US by Customs and the CIT included LFFPs that infringed one or more of the Subject Patents.

80. Currently, Customs is holding fourteen (14) containers consisting of approximately 1,356,000 of the Jazz's LFFPs. Based on the average cost per camera of $1.70, the cost value of the 1,356,000 LFFPs is $2,305,200.

81. On information and belief, these containers are replete with infringing cameras of types already adjudicated to infringe by the Commission and CIT. However, there is no way to segregate infringing cameras from noninfringing cameras without opening the packaging of each LFFP and conducting an evidentiary hearing. Jazz US elected to package its LFFPs in opaque boxes that disguise the nature of its shells used to refurbish the LFFPs so that it cannot be determined from external visual inspection.

82. On information and belief, Defendant Ribi intends to purchase the LFFPs in the fourteen (14) containers detained by Customs and plans to sell or offer them for sale in the United States, and continue Jazz US' business of purchasing infringing LFFPs from Polytech.

83. Benun and Jazz US have repeatedly represented to Customs, the Commission, the Bankruptcy Court, and the CIT that they learned from earlier findings of infringement how to avoid infringement in the future. However, these representations consistently have been proven to be false, or Jazz had decided to ignore those findings.

84. On information and belief, Defendant Ribi's intent to purchase such LFFPs was formed by or with the aid of Benun to induce the continued pattern of "judgment proof" infringing conduct that Jazz US engaged in prior to being liquidated.

## COUNT I FOR PATENT INFRINGEMENT

85. Count I is an action for patent infringement arising under Section 271 of the Federal Patent Laws, 35 U.S.C. § 271 et seq.  Plaintiff seeks relief for the infringement of the Subject Patents by each of the Defendants.

86. Plaintiff repeats and realleges the allegations of complaint set forth in paragraphs 1 through 85 above as though fully set forth herein.

87. On information and belief, Defendants Polytech are refurbishing infringing LFFPs, and selling them or intending to sell them to Defendant Ribi for importation and sale in the United States.

88. On information and belief, Defendants Polytech are infringing at least one of the Subject Patents by making, using, selling, importing and/or offering for sale LFFPs covered by at least one of the Subject Patents.

89. On information and belief, Defendants Polytech are refurbishing LFFPs for sale and importation in the United States using a process that infringes the '649 patent.

90. On information and belief, Defendants Ribi and Benun acquired LFFPs from Jazz US and/or Polytech that infringe at least one of the Subject Patents and/or intend to do so.

91. On information and belief, Defendants Ribi and Benun are or will be infringing at least one of the Subject Patents by making, using, selling, importing and/or offering for sale LFFPs covered by the Subject Patents.

92. On information and belief, Defendants Ribi and Benun import or intend to import into the United States LFFPs that have been assembled using a process that infringes the '649 patent.

93. With full knowledge of Fuji's previously adjudicated patent rights, the aforesaid acts of Defendants Ribi, Polytech and Benun constitute willful infringement of the Subject Patents and are in violation of 35 U.S.C. §271 et seq. of the Patent Laws.

94. By reason of the foregoing, Fuji is being irreparably damaged and will continue to be irreparably damaged unless Defendants Ribi, Polytech and Benun are enjoined, preliminarily and permanently, from making, using, selling, importing and/or offering for sale LFFPs covered by the Subject Patents

## COUNT II FOR INFRINGEMENT INDUCEMENT

95. Count II is an action for inducing infringement under 35 U.S.C. § 271(b).  Plaintiff seeks relief for the infringement of the Subject Patents by the active inducement of infringement by Defendants Benun and Polytech.

96. Plaintiff repeats and realleges the allegations of complaint set forth in paragraphs 1 through 95 above as though fully set forth herein.

97. On information and belief, Defendant Benun was behind the formation of Defendants Polytech and Ribi, and controls Polytech and Ribi.

98. On information and belief, Defendant Benun profits directly or indirectly from the profits of Polytech and Ribi.

99. On information and belief, Defendants Polytech and Ribi, with the knowledge and at the direction of Benun, sell and offer for sale in and to the United States refurbished LFFPs that infringe one or more of the Subject Patents.

100.    On information and belief, Benun knew or should have known that his actions would induce actual infringement of the Subject Patents.

101.    On information and belief, Defendants Polytech have known or should have known that the importation and sale of their LFFPs in the United States would infringe the Subject Patents.

102.    On information and belief, Defendant Benun has or will induce the infringement of Polytech and/or Ribi of the Subject Patents.

103.    On information and belief Defendants Polytech have induced the infringement by Benun and Ribi of the Subject Patents.

104.    By reason of the foregoing Fuji is being irreparably harmed and will continue to be irreparably harmed unless Defendants Benun and Polytech are enjoined, preliminarily and permanently, from inducing infringement of the Subject Patents.  Fuji has no adequate remedy at law.

WHEREFORE, Plaintiff prays for the following relief:

a.    That Defendants Ribi, Benun and Polytech be adjudged to have infringed, and Defendants Benun and Polytech be adjudged to have induced the infringement of each of U.S. Patent Nos. 4,833,495; 4,855,774; 4,884,087; 4,954,857; 4,972,649; 5,063,400; 5,235,364; 5,316,111; 5,381,200; 5,408,288; 5,436,685; Re 34,168; Des. 345,750; Des. 356,101; and Des. 372,722 (the "Subject Patents") and; that such infringement be deemed willful;

b.    That each of Defendants, their respective officers, agents, servants, employees and attorneys and all persons in active concert or participation with any of them who receive actual notice of the order by personal service or otherwise, be preliminarily and permanently enjoined and restrained from infringing or inducing others to infringe any of the Subject Patents

by importing, manufacturing, selling, offering for sale or otherwise transferring in any manner, or selling or delivering outside the United States for resale in the United States or importation into the United States, lens fitted film packages ("LFFPs"), commonly referred to as one-time-use cameras, single use cameras or disposable cameras that infringe one or more of the Subject Patents;

      c.  That each of Defendants, their respective officers, agents, servants, employees and attorneys and all persons in active concert or participation with them, be preliminarily enjoined and restrained from infringing or inducing others to infringe any of the Subject Patents by importing, manufacturing, selling, offering for sale or otherwise transferring in any manner, or selling or delivering outside the United States to persons or entities known by a person subject to this order to intend to export to or import from the United States, lens fitted film packages ("LFFPs"), commonly referred to as one-time-use cameras, single use cameras, or disposable cameras, of the types determined to infringe one or more of the Subject Patents by this Court in Fuji Photo Film Co. v. Jazz Photo Corp., 249 F. Supp.2d 434 (D.N.J. 2003), aff'd 394 F.3d 1368 (Fed. Cir. 2005) as to the LFFPs sold in the United States prior to August 21, 2001, or by the United States International Trade Commission (the "Commission") in the enforcement proceedings against Jazz Photo Corp. ("Jazz"), Benun and Jazz's then president, Anthony Cossentino in Certain Lens-Fitted Film Packages, Inv. No. 337-TA-406, an Administrative Law Judge's ("ALJ") Enforcement Initial Determination dated April 6, 2004, Order of the Commission of July 27, 2004 (69 Fed. Reg. 46179 (August 2, 2004)) as to LFFPs sold in the United States from August 21, 2001 through December 12, 2003, and LFFPs not colorably different therefrom; and

d.  that Plaintiff be awarded its damages by reason of Defendants infringement, and inducing infringement of the Subject Patents in an amount not less than a reasonable royalty;

e.  that Plaintiff be awarded treble damages to compensate for the willful infringement of its patents;

f.  that Plaintiff be awarded its costs and expenses including reasonable attorney fees; and

g.  that Plaintiff has such other and further relief, which the Court may deem just, or proper under the circumstances.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Fuji hereby demands a trial by jury as to all claims in this litigation.

Dated: Newark, New Jersey
        April 15, 2005

Arthur D. Grossman (ADG-9237)
Robert J. Rohrberger (RJR-1918)
David Ward (DW-7669)
Fox & Fox LLP
70 South Orange Avenue
Livingston, New Jersey 07039
Tel: (973) 597-0777
Fax: (973) 597-0884
Attorneys for Plaintiff
Fuji Photo Film Co., Ltd.

By_____
        Arthur D. Grossman (ADG 9237)

Of Counsel:
STROOCK & STROOCK & LAVAN LLP
Lawrence Rosenthal (LR-9526)
Matthew W. Siegal (MWS-7467)
Angie M. Hankins (AMH-1367)
180 Maiden Lane
New York, New York 10038-4982
212-806-5400

25