UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**NOT FOR PUBLICATION**

FUJIFILM CORPORATION,
        Plaintiff,

v.

JACK C. BENUN, JAZZ PRODUCTS
LLC, POLYTECH ENTERPRISES LTD,
and POLYTECH (SHENZHEN)
CAMERA CO. LTD,
        Defendants.

Civ. Action No. 05-1863 (KSH)

**OPINION**

**KATHARINE S. HAYDEN, U.S.D.J.**

### I. Introduction

FUJIFILM Corporation ("Fuji") filed this patent infringement suit against the defendants on April 18, 2005 and now moves for summary judgment on the issue of whether the items at issue are covered by the claims of its patents. The defendants, Jack C. Benun ("Benun"), Jazz Products LLC ("Jazz Products") and the Polytech defendants ("Polytech) have each filed a cross-motion for summary judgment.

### II. Background

Fuji is the owner of fifteen patents (the "subject patents")[1] related to the design and production of lens-fitted film packages ("LFFPs"), commonly referred to as single-use or

---

[1] The subject patents are:
U.S. Patent No. 4,833,495 (hereinafter "the '495 patent");
U.S. Patent No. 4,855,774 (hereinafter "the '774 patent");
U.S. Patent No. 4,884,087 (hereinafter "the '087 patent");
U.S. Patent No. 4,954,857 (hereinafter "the '857 patent");
U.S. Patent No. 4,972,649 (hereinafter "the '649 patent");
U.S. Patent No. 5,063,400 (hereinafter "the '400 patent");
U.S. Patent No. 5,235,364 (hereinafter "the '364 patent");
U.S. Patent No. 5,361,111 (hereinafter "the '111 patent");

disposable cameras. LFFPs are "relatively inexpensive, disposable cameras which are loaded with film and a film cartridge so that after use, all of the film has been advanced into the film cartridge." Certain Lens-Fitted Film Packages, U.S. ITC Inv. No. 337-TA-406, Final Initial and Recommended Determination at 214 (Int'l Trade Comm'n 1999). An "LFFP consists of a plastic shell that is encased in a cardboard cover and equipped with a button-activated shutter, a lens, a viewfinder, a film advance mechanism, and optional flash units and buttons." Fuji Photo Film Co. v. ITC, 474 F.3d 1281, 1285-1286 (Fed. Cir. 2007).

Fuji has licensed the subject patents to several companies that manufacture LFFPs, including Eastman Kodak Co., Konica Minolta Holding Corp., Concord Camera Co. and Agfa-Gevaert GmbH A.G. (Final Pretrial Order ¶ 15.) But Fuji has defended its patents against companies that refurbish[2] LFFPs. The refurbished cameras are made from discarded shells of LFFPs that were originally manufactured by Fuji, Kodak, Konica, Concord or other companies. After the film is removed from the LFFPs for developing, the shells are shipped to factories where they are subjected to various processes, combined with new film and sold to consumers. (Final Pretrial Order ¶ 19.)

Jack Benun, the president of Jazz Products, has been involved in the business of refurbishing LFFPs for several years. (Benun Br. 1.) From 1994 until 2002, he served as the CEO and then as consultant to Jazz Photo Corporation ("Jazz Photo"), a company that

---

U.S. Patent No. 5,381,200 (hereinafter "the '200 patent");
U.S. Patent No. 5,408,288 (hereinafter "the '288 patent");
U.S. Patent No. 5,436, 685 (hereinafter "the '685 patent");
U.S. Patent No. Re 34,168 (hereinafter "the '168 patent");
U.S. Patent No. Des. 345,750 (hereinafter "the 'D750 patent");
U.S. Patent No. Des. 356,101 (hereinafter "the 'D101 patent");
U.S. Patent No. Des. 372,722 (hereinafter "the 'D722 patent");
[2] The Court will use the neutral term "refurbish" to refer to the process of manufacturing LFFPs from spent LFFP shells. The Federal Circuit has stated that the term "refurbish" is a "convenient neutral term without legal significance, intended to connote neither permissible "repair" nor impermissible "reconstruction" of the used cameras. Jazz Photo Corp. v. Int'l Trade Comm'n, 264 F.3d 1094, 1098 n.1 (Fed. Cir. 2001),

2

refurbished LFFPs. (Id.) Benun is now the Chief Executive Officer of Jazz Products, which "is in the business of importing and selling photographic goods," including refurbished LFFPs. (Defendants' Joint Statement of Material Facts ¶ 8.) Polytech Enterprises, Ltd. ("Polytech HK") is a Hong Kong corporation whose "business involves the sale of cameras, including LFFPs." (Id. ¶ 9.) Polytech (Shenzhen) Camera Co. Ltd. ("Polytech China") is a Chinese Corporation that "is engaged in the manufacture of photographic products, including the refurbishing of spent LFFP shells." (Id. ¶ 10.)

Fuji has been involved in litigation to enforce its patent rights against companies that refurbish LFFPs since 1998.[3] In that year, Fuji filed a complaint before the International Trade Commission ("ITC") alleging that 26 respondents, including Jazz Photo, sold LFFPs that infringed at least one claim of its patents. In re Certain Lens-Fitted Film Packages, U.S. ITC Inv. No. 337-TA-406, Final Initial and Recommended Determination 1, 2 (Int'l Trade Comm'n June, 9 1999). The ITC appointed an Administrative Law Judge ("ALJ") to conduct a hearing on Fuji's claims. After extensive hearings, the ALJ found that Jazz Photo and the other respondents had not met their burden of proving the defense of "permissible repair." Id. at 164. The ALJ concluded that most of the respondents, including Jazz Photo, had infringed on Fuji's patents. Id. at 342-348. The ITC adopted the ALJ's findings and issued an exclusion order under 19 U.S.C. § 1337 directing Customs to exclude from entry all LFFPs that infringed any claim of the subject patents. In re Certain Lens-Fitted Film Packages, U.S. ITC Inv. No. 337-TA-406, Commission Opinion (Int'l Trade Comm'n June 9, 1999), aff'd in part, rev'd in part and remanded, Jazz Photo Corp. v. Int'l Trade Comm'n, 264 F.3d 1094 (Fed. Cir. 2001)("Jazz I").

---

[3] See, e.g., Jazz Photo Corp. v. Int'l Trade Comm'n, 264 F.3d 1094 (Fed. Cir. 2001)("Jazz I"); Fuji Photo Film Co. v. Int'l Trade Comm'n, 386 F.3d 1095 (Fed. Cir. 2004) ("Fuji I"); Fuji Photo Film Co. v. Jazz Photo Corp., 394 F.3d 1368 (Fed. Cir. 2005)("Fuji II"); Jazz Photo Corp. v. United States, 439 F.3d 1344 (Fed. Cir. 2006) ("Jazz II"); Fuji Photo Film Co. v. Int'l Trade Comm'n, 474 F.3d 1281 (Fed. Cir. 2007).

3

The ITC also issued cease and desist orders to 20 U.S. companies, including Jazz Photo, directing them to stop importing and selling infringing LFFPs. In re Certain Lens-Fitted Film Packages, U.S. ITC Inv. No. 337-TA-406, Cease and Desist Order (Int'l Trade Comm'n June 2, 1999).

Jazz Photo appealed the decision of the ITC to the Federal Circuit, who affirmed in part, reversed in part and remanded the case to the ITC for further proceedings consistent with its decision. Jazz I, 264 F.3d at 1111. In that case, the Federal Circuit identified an eight-step process that would constitute permissible repair for spent LFFPs that had been sold in the United States. Id. at 1098.

In 1999, Fuji filed a patent infringement complaint against Benun, Jazz Photo and Jazz Photo (Hong Kong) Ltd. in the District of New Jersey. Fuji Photo Film Co. v. Jazz Photo Corp., 249 F.Supp 2d 434 (D.N.J. 2003). The complaint alleged that the defendants had imported and sold infringing LFFPs in the United States between 1995 and August 1, 2001. The case was stayed pending the decision of the Federal Circuit in Jazz I but was eventually tried before a jury in 2002. The court found that all of the LFFPs at issue were covered by the subject patents, that about 91% of them infringed on the patents and that Benun and Jazz Photo (Hong Kong) Ltd. had induced most of the infringement. Id. Fuji then sought a permanent injunction against the defendants, which the court denied. The defendants appealed but the Federal Circuit affirmed the trial court's decisions. Jazz II, 394 F.3d 1368 (Fed. Cir. 2005).

In 2002, the ITC instituted an enforcement proceeding against Jazz Photo, Benun and Anthony Cossentino (Jazz's Photo's former President). The ALJ who was appointed determined that they had violated the general exclusion order and the cease and desist order issued by the ITC in 1999. In re Certain Lens-Fitted Film Packages, U.S. ITC Inv. No. 337-TA-406,

4

Enforcement Initial Decision (Int'l Trade Comm'n April 6, 2004.)  The ITC then issued an order imposing civil penalties against Benun, Cossentino and Jazz Photo.  In re Certain Lens-Fitted Film Packages, U.S. ITC Inv. No. 337-TA-406, Commission Opinion (Int'l Trade Comm'n April 4, 2005.)  The matter was appealed and the Federal Circuit affirmed the ITC's decision as to most of the cameras but reversed as to a specific type of camera that the court found did not infringe on Fuji's patents.  Fuji Photo Film Co. v. Int'l Trade Comm'n, 474 F.3d 1281, 1298 (Fed. Cir. 2007).  The Federal Circuit held that the replacement of the full backs of the cameras was part of a permissible repair.  Id.

In 2003, Jazz Photo and Benun both declared bankruptcy under Chapter 11.  Fuji was the largest unsecured creditor of Jazz Photo and Benun as a result of the judgment in Fuji Photo Film Co. v. Jazz Photo Corp., 249 F.Supp 2d 434 (D.N.J. 2003) and Fuji's unliquidated infringement claims.  Jazz Photo was permitted to continue its business until the bankruptcy court ordered the company to cease doing business on March 1, 2005.  The bankruptcy court then converted the bankruptcy proceeding to a Chapter 7 liquidation and appointed a liquidating trustee.  (Defendants' Joint Statement of Material Facts ¶ 14.)

On April 12, 2005, Fuji filed an administrative expense claim against Jazz Photo for cameras that were sold while Jazz Photo was under bankruptcy protection, May 20, 2003 to February 22, 2005.  (Fuji's Response to the Defendants' Statement of Material Facts 17.)  Fuji claims that Jazz Photo sold about 17,440,865 infringing cameras ("Jazz Photo bankruptcy period cameras") during this time (Id.)  The liquidating trustee and Fuji later agreed to settle Fuji's administrative expense claim for $6,000,000.  (Defendants' Joint Statement of Material Facts ¶ 34.)

The liquidating trustee then sought purchasers for certain assets of the bankruptcy estate including approximately 1.4 million LFFPs which had been produced by Polytech through the refurbishment of spent camera shells. (Defendants' Joint Statement of Material Facts ¶ 15.) One of the potential purchasers was Ribi Tech Products LLC ("Ribi Tech"), a company that was organized by several members of Benun's family. Ribi Tech has changed its name to Jazz Products LLC ("Jazz Products"). (Defendants' Joint Statement of Material Facts ¶ 26.) Fuji objected to the proposed sale to Jazz Products because it believed this company would sell infringing LFFPs in the United States. (Fuji's Response to the Defendants' Statement of Material Facts 11.) The Bankruptcy Court overruled Fuji's objections and authorized the sale of the LFFPs to Jazz Products. (Defendants' Joint Statement of Material Facts ¶ 16.) The liquidating trustee sold the 1.4 million LFFPs to Jazz Products on May 17, 2005 for approximately $887,000. (Id. ¶17.) Fuji did not appeal the bankruptcy courts order approving the sale. (Id. ¶ 22.)

After purchasing the LFFPs from the bankruptcy estate Jazz Products exported some of the cameras. (Defendants' Joint Statement of Material Facts ¶ 25.) Fuji then obtained an order from this Court directing the defendants to stop the exportation of the LFFPs until Fuji could conduct a "sampling exercise" on the goods being exported. (Id. ¶ 26.) Jazz Products submitted to the sampling then exported some of the remaining LFFPs, some of which were later re-imported into the United States (Id. ¶¶ 27, 28.)

**III. Standard**

On a motion for summary judgment the Court "must examine the record to see whether the [moving party], in depositions, answers to interrogatories, admissions, affidavits and the like, has demonstrated 'the absence of a genuine issue of material fact' and his entitlement to

6

judgment as a matter of law." Beard v. Banks, 126 S. Ct. 2572, 2578 (2006)(quoting Fed. R. Civ. P. 56). The Supreme Court has stated, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986). An issue is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. At this stage, the Court "is required to view the evidence in a light most favorable to the nonmoving party and draw all reasonable inferences in favor of the nonmoving party." Imazio Nursery, Inc. v. Dania Greenhouses, 69 F.3d 1560, 1562 (Fed Cir. 1995).

## IV. Discussion

### A. Fuji's Motion for Summary Judgment

Fuji seeks summary judgment on the issue of "prima facie infringement," which it defines as "'being covered by one or more claims of the subject patents' without regard to whether the cameras otherwise meet any affirmative defenses such as permissible repair." (Fuji's Br. 1.)[4] The defendants oppose this motion with a joint brief claiming that Fuji "failed to produce adequate evidence to support its claim" and arguing that their affirmative defenses preclude summary judgment. (Defendants Opp'n Br. 1-2.)

"Determining whether a patent claim is infringed requires a two-step analysis: 'First, the claim must be properly construed to determine its scope and meaning. Second, the claim as properly construed must be compared to the accused device or process.'" Nike Inc. v. Wolverine World Wide, Inc., 43 F.3d 644, 646 (Fed. Cir. 1994)(quoting Carroll Touch, Inc. v. Electro Mechanical Sys., 15 F.3d 1573, 1576 (Fed. Cir. 1993)). The first step is a question of law and

---

[4] Fuji excludes "Special Achiever Cameras" from its motion (Fuji's Br. 1), which are made by refurbishing spent Achiever brand LFFPs in a specific way (Fuji's Reply Br. 2).

7

the second step is a question of fact.  Catalina Lighting, Inc. v. Lamps Plus, Inc., 295 F.3d 1277, 1285 (Fed. Cir. 2002)

For design patents, there is a different two-step analysis:  First, the court must construe the design patent's claim.  Next, the fact-finder must compare the claim and the accused device, employing both the "ordinary observer" test and the "point of novelty" test.  Catalina Lighting, Inc., 295 F.3d at 1286 -1287(citations omitted).  The "ordinary observer" test requires that the district court perform the following inquiry:

> [I]f, in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other.

Gorham Co. v. White, 81 U.S. 511, 528 (1871).  The "point on novelty" test "requires proof that the accused design appropriates the novelty which distinguishes the patented design from the prior art."  Contessa Food Products, Inc. v. Conagra, Inc., 282 F.3d 1370, 1377 (Fed. Cir. 2002).  Both of these tests must be satisfied to find infringement of a design patent.  Id.

The first step is claim construction, which can be decided as a matter of law.  Catalina Lighting, Inc., 295 F.3d at 1285.  Fuji claims that the defendants have failed to raise any issues regarding this step and argues that the Court can rely on findings made in other proceedings, which construed the claims of the subject patents.  (Fuji Br. 15.)  Other courts have relied on the ITC's construction of these claims.  See, e.g., Fuji Photo Film Co. v. Jazz Photo Corp., 249 F.Supp 2d 434 (D.N.J. 2003); Fuji Photo Film Co. v. Achiever Industry, Ltd., CDCA 05CV8044-JFW, Civil Minutes, (Feb. 2, 2007) and the defendants have argued that the claims should be construed differently.  For these reasons, the court will rely on the ITC's construction of the claims in In re Certain Lens-Fitted Film Packages, U.S. ITC Inv. No. 337-TA-406, Final Initial and Recommended Determination at 5-47 (Int'l Trade Comm'n 1999).

In the second step the claims as construed must be compared to the accused device or process. Nike Inc.,43 F.3d at 646. Fuji claims that "[t]he undisputed evidence of record in this proceeding shows that all refurbished shell types, except the Special Achiever Shells contain all the elements of at least one claim of one of the Subject Patents, based on the analysis of Fuji's expert Mr. Bellows." (Fuji Br. 16.)

Fuji's expert, Alfred Bellows ("Bellows") examined 1,299 LFFPs, which Jazz Products purchased from the inventory of Jazz Photo. (Bellow Report Ex. A to the Hankins Decl. ¶ 10.) He states, "[m]y review consisted of looking at the exterior of each camera body sufficiently to confirm that is was of a brand and model that I had previously examined in detail and that the attached list of cameras was accurate with respect to camera number and type (brand)." (Id.) He found the sampled cameras were originally manufactured by Fuji, Kodak, Konica and Concord. (Id.) He also found that all of the cameras, except for one model, "had also been amongst the 121 samples of single use cameras and shells examined by me in detail and summarized in the two reports cited above."[5] (Id. ¶ 11.) The one exception was a model of LFFP originally manufactured by Fuji, which is known as "DO2S." (Id.) Bellows examined the DO2S model and found that "its potential infringements are the same as those found in the 490 (Jazz CS7) shell used by Jazz and Polytech and which I previously examined in detail when preparing the two reports cited above." (Id.) After examining the LFFPs, Bellows concluded that "each of the 1,299 single use camera samples that had been refurbished by Jazz infringe at least one of the Fuji patents." (Id. ¶ 28.)

The defendants have not offered any countervailing evidence that its LFFPs do not tread on the claims of the subject patents. As Fuji states, "they have not pointed to a single element of

---

[5] The two reports are were submitted in connection with the Enforcement II proceeding. (Bellows Reports Exhibits 8, 9 to the Hankins Decl.)

9

any of the asserted claims that are not found in their cameras." (Fuji's Reply Br. 2.) Nor have they offered any evidence that contradicts the conclusions of Fuji's expert. Furthermore, the defendants stipulated in the Pretrial Order that all of the Fuji, Konica, Concord and Unique shells they refurbished "include each and every one element of at least one claim of the Fuji Patents." (Final Pretrial Order ¶¶ 79, 80, 81, 82.) The defendants also appear to concede the issue of *prima facie* infringement in their papers, when they state: "[a]t most, the Court might enter a finding of fact that one or more of the Fuji patents claims read on the merchandise at bar." (Defendants' Opp'n Br. 13, n. 14.) Fuji states in its reply brief that the finding the defendants concede may be entered is "precisely the relief Fuji requested." (Fuji Reply Br. 1.) Fuji also asserts that most of the defendants' arguments, which relate to their affirmative defenses are irrelevant because the defenses are only applicable if the Court finds *prima facie* infringement. (Id.)

Fuji has submitted sufficient evidence to support its motion for partial summary judgment. "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "In the language of the Rule, the nonmoving party must come forward with 'specific facts showing that there is a *genuine issue for trial.*'" Id. (quoting Fed. R. Civ. P. 56 (e)). Although the defendants argue that summary judgment is not appropriate they have not come forward with specific facts showing that there is a genuine issue for trial, therefore, the Court must grant Fuji's motion for partial summary judgment.

### B. The Defendants' Motions for Summary Judgment

Jack Benun, Jazz Products and Polytech have each brought a motion for summary judgment. However, the defendants all raised four grounds for summary judgment, which are indistinguishable: (1) that Fuji may not seek compensation more than once for its patent rights; (2) the bankruptcy court's sale of Jazz Photo's inventory to Jazz Products constituted a patent exhausting first sale; (3) that Fuji's settlement of its claims against Jazz Photo renders this action moot with respect to a certain portion of the LFFPs at issue; (4) the affirmative defense of permissible repair. The court will address these grounds collectively. Polytech and Benun each raised an additional ground from summary judgment that will be discussed separately.

1. Double Recovery

The defendants argue that Fuji may not seek compensation more than once for patents rights embodied in a particular product. It states: "Once Fuji was compensated by the Jazz Photo bankruptcy trustee for any patent rights which might have inhered in cameras which Jazz imported during the time the company was under the bankruptcy protection, its rights in such cameras were exhausted." (Jazz Products's Br. 15; Polytech's Suppl. Br. 6.) Essentially, it argues that Fuji should be barred from pursuing a double recovery for the same cameras.

Fuji counters that it is not seeking a double recovery rather it is seeking full compensation for its patent infringement claim. (Fuji's Opp'n Br. 18.)[6] It argues that the defendants are joint tortfeasors therefore they are each liable for the full amount of the damages. Fuji further argues that the settlement of a claim with one tortfeasor does not release the other tortfeasors[7] and the determination of what constitutes a full recovery for the cameras at issue "presents genuine issues of material fact for determination by a jury." (Fuji's Opp'n Br. 20.)

---

[6] Fuji opposed the defendants' motions for summary judgment in a consolidated opposition brief.
[7] Fuji admits that the settlement of its claim against Jazz Photo should be applied as a partial credit to the liability of the Polytech defendants. (Fuji's Opp'n Br. 20.)

The Federal Circuit has stated, "parties that make and sell an infringing device are joint tort-feasors with parties that purchase an infringing device for use or resale." Shockley v. Arcan, Inc., 248 F.3d 1349, 1364 (Fed Cir. 2001). The court went on to explain: "Each joint tort-feasor is liable for the full amount of damages (up to a full single recovery) suffered by the patentee." Id. In addition, the Supreme Court has held that the release of one tortfeasor without full satisfaction does not bar suit against the remaining tortfeasors. Aro Mfg. Co. v. Convertible Top Replacement Co., 377 U.S. 476, 501 (1964)

Fuji is entitled to seek damages against different joint tortfeasors up to a full single recovery and the determination what constitutes a full single recovery for the cameras at issue is a question of fact that cannot be resolved on this motion for summary judgment. The defendants' motion for summary judgment on this ground is denied.

   2. Mootness

The defendants' second argument is that Fuji's settlement of the administrative expense claim renders this action moot with respect to the Jazz bankruptcy period cameras. They argue that "the payment of funds pursuant to orders of the bankruptcy court renders moot any challenge to the payment or the underlying determinations related thereto." (Jazz Products's Br. 22-23.) Essentially, they claim that Fuji fixed the amount of damages for its claim when it settled the administrative expense claim and argue that Fuji is barred from challenging that amount in this proceeding.

Fuji counters that the settlement of its claim did not fix the value of its patent rights. (Fuji's Opp'n Br. 22.) It claims that the bankruptcy court did not make any findings about the quantity of infringing cameras or what would be a reasonable royalty rate. (Id.) It cites to the settlement agreement, which states in relevant part "It is expressly understood and agreed this

Settlement Agreement shall not be construed as an admission of liability by the Parties to this Settlement Agreement, or by anyone else." (Settlement Agreement, Ex. 11 to the Siegal Decl.)

The Court finds that Fuji's settlement of its administrative expense claim did not fix the amount of damages for the cameras Jazz Bankruptcy period cameras. Fuji is not attempting to challenge the bankruptcy court's order authorizing the settlement as the defendants contend. The settlement resolved Fuji's administrative expense claim against Jazz Photo; it did not fix a total amount of liability for the cameras at issue. Furthermore, the determination of what constitutes a full recovery for these cameras is a question of fact that cannot be determined on this motion for summary judgment. The defendants' motion for summary judgment on this ground is denied.

3. First Sale

The defendants also argue that the bankruptcy court's sale of the cameras to Jazz Products constituted a patent exhausting first sale, which terminated Fuji's patent rights with respect to those cameras. (Jazz Products's Br. 24.) They argue that the bankruptcy court's order authorizing the sale, which states in part "the Purchaser requires that the Assets be sold free and clear of all liens, encumbrances and security interests" encompassed Fuji's "interest" in the patents claimed to be incorporated in the transferred merchandise. (Id. at 27) (quoting the bankruptcy court's order of May 16, 2005.) Moreover, they argue that Fuji's failure to appeal the bankruptcy court's order prevents them from pursuing claims for those cameras. (Id. at 31.)

Fuji argues that the bankruptcy court's sale between Jazz Photo and Jazz Products did not alter its patent rights in those cameras. (Fuji's Opp'n Br. 30.) It concedes that it could not sue the defendants for infringing acts committed by Jazz Photo prior to the sale, but argues that it is not barred from bringing claims against the defendants for infringing acts that occurred after the

13

sale. (Id. 31.) Fuji also argues in the alternative that the sale of the cameras did not constitute a patent exhausting first sale because "the Federal Circuit's first sale rule for patent exhaustion requires the sale to be with the patent owner's authority (i.e., by Fuji or its licensees)." (Id. 32.)

The bankruptcy sale did not constitute a patent exhausting first sale because the cameras were sold without Fuji's consent. The Federal Circuit's rule for patent exhaustion requires that the sale be made with the patent owner's authority. Jazz I, 264 F.3d at 1105. "The unrestricted sale of a patented article, *by or with the authority of the patentee*, 'exhausts' the patentee's right to control further sale and use of that article by enforcing the patent under which it was first sold." Id. (emphasis added). In this case the bankruptcy court approved the sale over Fuji's objection. The defendants have failed to show that the bankruptcy court's sale constituted a patent exhausting first sale. Accordingly, their motion for summary judgment on this ground is denied.

    4.   Permissible Repair

The defendants have also moved for summary judgment on the affirmative defense of permissible repair. The defendants claim that there is a "well-developed body of law concerning what constitutes 'permissible repair' with respect to LFFPs generally, and with respect to LFFPs which are alleged to infringe the Fuji patents-in-suit, in particular." (Jazz Products's Br. 38)(citing Jazz I; Fuji II; Jazz II; Fuji v. ITC, 474 F.3d 1281(Fed. Cir. 2007). Polytech and Jazz Products both rely on Benun's motion for summary judgment for evidence in support of their motions for summary judgment on the issue of permissible repair. (Jazz Products's Br. 40 ; Polytech's Br. 39.) Benun claims that the cameras involved in this case are identical to those which were found to have been permissibly repaired in CIT case. Jazz Photo Corp. v. United States, 353 F.Supp 2d 1327 (Ct. Int'l Tr. 2004) aff'd Jazz II, 439 F.3d 1344 (Fed Cir. 2006). He

argues that the "evidence in this case shows that the cameras at bar were made in the exact same way as the cameras made in the case before the CIT." (Benun's Br. 30.) However, Benun fails to cite any record evidence in his brief.

Fuji argues that the defendants have not met their burden of proving the affirmative defense of permissible repair. (Fuji's Opp'n Br. 52.) They claim that the defendants have failed to cite any facts in the record, which support their argument that the cameras were permissibly repaired. (Id.) Moreover, Fuji argues that there are genuine issues of material fact which make summary judgment on this issue inappropriate at this time. (Id.)

Permissible repair is an affirmative defense which must be proven by a preponderance of evidence. Fuji II, 394 F.3d at 1373. The party asserting the defense must show that the items in question have undergone a patent exhausting "first sale" in the United States. Jazz I, 264 F.3d at 1105. It then has the "burden of coming forward with evidence to show that the activities performed in processing the used cameras constituted permissible repair." Fuji II, 394 F.3d at 1373.

The defendants have not met their burden of coming forward with evidence showing that there are entitled to relief on this ground. Their briefs fail to cite to any record evidence supporting their arguments. The affirmations submitted by Benun, Michal Zawodny[8], Leon Silvera[9] and Jessie Szeto[10] fail to identify sufficient evidence to meet their "burden of coming forward with evidence to show that the activities performed in processing the used cameras constituted permissible repair." Fuji II, 394 F.3d at 1373. Moreover, the determination of permissible repair is a fact intensive inquiry. The defendants conceded this point in an earlier

---

[8] Michael Zawodny is the quality control manager for Jazz Products. (Zawodny Affirmation ¶ 1.)
[9] Leon Silvera is the president of Photo Recycling Enterprises, Inc., a company that "was in the business of collecting used single use camera shells and selling them to Jazz Photo Inc." (Silvera Affirmation ¶ 1.)
[10] Jessie Szeto is the managing director of Polytech Photo (HK) Ltd. (Szeto Affirmation ¶ 1.)

filing where they stated "the principal affirmative defense asserted by the defendants non-infringing 'permissible repair' of cameras as to which plaintiff's patent rights have been exhausted – involves a fact intensive analysis and may require evaluation of circumstantial evidence by a trier a fact as to certain issues." (Defendants' Mot. to Strike 7, n.5, docket entry # 245.) The fact intensive nature of the inquiry and the failure of the defendants to produce sufficient evidence make summary judgment inappropriate on the issue of permissible repair.

**C. The Polytech Defendants ("Polytech")**

Polytech has raised two additional grounds for summary judgment: (1) that they did not directly infringe on Fuji's patents; (2) that they did not induce the infringement of Fuji's patents.

1. <u>Direct Infringement</u>

Polytech argues that it cannot be held liable for direct infringement because its actions were wholly extraterritorial and United States patent law does not have extraterritorial effect. (Polytech's Br. 24.) Fuji argues that the Polytech is liable for direct infringement pursuant to 35 U.S.C. § 271(a) because Polytech China "manufactured LFFPs for Polytech HK with the knowledge that they were destined for the United States" and Polytech HK sold them to Benun's companies in the United States. (Fuji's Opp'n Br. 36.)

Section 271(a) states in relevant part, "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States and patented invention during the term of the patent therefore, infringes the patent." 35 U.S.C. § 271(a). The Federal Circuit has stated that "the reach of section 271(a) is limited to infringing activities that occur within the United States." <u>MEMC Electronic Materials, Inc. v. Mitsubishi Materials Silicon Corp.</u>, 420 F.3d 1369, 1375 (Fed. Cir. 2005). The determination of where a

sale occurs for purposes of section 271(a) depends on where the essential activities related to the sale occurred. Id. at 1337.

The parties dispute whether Polytech sold the cameras in the United States. Polytech contends that all of the essential activities related to the sales occurred abroad. (Polytech's Br. 27.) They claim "[p]urchases were negotiated abroad, payment was made abroad, and the United States purchaser accepted title to the goods abroad, and incurred responsibility for transportation and risk of loss abroad" (Id. at 28), however, they failed to cite any record evidence to support these assertions. Fuji argues that Polytech manufactured the cameras knowing they were destined for sale in the United States (Fuji's Opp'n Br. 38-39) and provides record evidence that purchase orders were placed from the United States, the ship-to address was in the United States, the invoices have a delivery address in the United States, and the shipping and export documents indicate that they are being shipped to the United States. (Id.)(citing Siegal Decl. Ex. 26, 27). From this a reasonable jury could conclude that the sales were made in the United States, therefore, summary judgment must be denied on this ground. See SEB, S.A. v. Montgomery Ward & Co., Inc. 412 F.Supp.2d 336, 342 (S.D.N.Y. 2006).

2. Inducing Infringement

The Polytech defendants also argue that they are not liable for inducing the infringement of Fuji's patents. (Polytech's Br. 30.) They contend that "Fuji cannot demonstrate that [Polytech] either engaged in knowing infringement or induced others to actively infringe any of Fuji's patents." (Id.) Fuji argues that there is enough evidence for a reasonable jury to conclude that Polytech induced the infringement of its patents under 35 U.S.C. § 271 (b). (Fuji's Opp'n Br. 40.)

Section 271(b) states: "Whoever actively induces infringement of a patent shall be liable as an infringer." To prevail on a claim of inducement, "the patentee must show, first that there has been direct infringement, and second that the alleged infringer knowingly induced infringement and possessed specific intent to encourage another's infringement." <u>Minnesota Min. & Mfg. Co. v. Chemque, Inc.</u>, 303 F.3d 1294, 1304 -1305 (Fed. Cir. 2002).

The first element of an inducement claim is showing that there has been direct infringement. Fuji claims that it will be able to proved direct infringement of its patents at trial. (Fuji's Opp'n Br. 41.) Polytech argues that Fuji may not be able to show direct infringement if the Court grants summary judgment on any of the defenses raised by the defendants (permissible repair, mootness, exhaustion, and first sale). (Polytech's Br. 30.) Because the Court has not granted summary judgment on the defendants' affirmative defenses, Polytech's argument on this element fails.

For the second element, "[t]he plaintiff has the burden of showing that the alleged infringer's actions induced infringing acts *and* that he knew or should have known his actions would induce actual infringements." <u>Manville Sales Corp. v. Paramount Systems, Inc.</u>, 917 F.2d 544, 553 (Fed. Cir. 1990). Polytech claims that "undisputed evidence demonstrates that the Polytech defendants took actions designed to ensure that there was no infringement of the Fuji patents with respect to the LFFPs which they produced." (Polytech's Br. 30-31.) They cite the affirmations of Jessie Szeto and Michal Zawodny as evidence that they took purposeful steps to avoid infringing Fuji's patents. (Szeto Affirmation ¶4; Zawodny Affirmation ¶8)(explaining the steps Polytech China takes to eliminate cameras that were originally sold abroad or already refurbished). Fuji counters that actual results of Polytech's efforts, which it claims contain

significant amounts of infringing cameras, may lead a reasonable jury to the conclusion that Polytech had the requisite intent to infringe its patents. (Fuji's Opp'n Br. 42.)

Intent is a factual determination which is "within the province of the trier of fact." Water Technologies Corp. v. Calco, Ltd., 850 F.2d 660, 668-669 (Fed. Cir. 1988). Based on the record before the Court, there are genuine issues of material fact over whether Polytech induced the infringement of Fuji's patents, and, therefore, the Court must deny their motion for summary judgment on this issue.

**D. Jack Benun**

Benun has raised two related grounds for summary judgment. He argues that "Fuji waived its claims against [him] for periods after December 12, 2003" and contends that Fuji's claims against him were decided in the bankruptcy proceeding. (Polytech Suppl. Br. 2.)

Fuji argues that its claims against Benun were not fully adjudicated in the bankruptcy court because infringing acts that occurred after March 11, 2005 (the date Benun's Chapter 7 proceeding commenced) were not addressed in that proceeding. Fuji concedes that it waived its claim against Benun in connection with his tenure with Jazz Photo; however, it argues that it did not waive its claims against Benun in connection with his tenure at Jazz Products. (Fuji Suppl. Br. 2.)

The commencement of a Chapter 7 proceeding creates an estate which is comprised of the interests of the debtor as of the commencement of the case. 11 U.S.C. § 541(a). Claims that arise after the date of commencement are not part of the estate and therefore cannot be resolved in the Chapter 7 proceeding. See, e.g., In re Bobroff, 43 B.R. 746, 751. (E.D.P.A. 1984); In re Atanasov, 221 B.R. 113, 117 (D.N.J. 1998).

Fuji's claims against Benun are based on his tenure at Jazz Products. Benun states that Jazz Products first significant business transaction occurred in May 2005. (Benun's Br. 3.) Therefore, the bankruptcy court did not address Fuji's claims against Benun related to his tenure at Jazz Products because they accrued after the commencement of his Chapter 7 case. In addition, the bankruptcy court's inability to hear these claims means that Fuji could not have not have waived its claims against him in that proceeding. Benun's motion for summary judgment on these grounds is denied.

### E. Supplemental Briefing

Defendants raise similar arguments with respect to the decision issued in the related bankruptcy proceeding. They argue that this matter is moot because Fuji cannot recover more than the $6 million it has already recovered. Again, this contention cannot carry the day on summary judgment. Liability has yet to be determined, much less the full extent of liability if any. Summary judgment is inappropriate on these grounds. The bankruptcy decision also did not impact the cross-motions for summary judgment before the court. Here, the court confronts the issue of *prima facie* infringement, which was not at issue in the bankruptcy proceeding and not addressed by the decision.

### V. Conclusion

Fuji's motion for partial summary judgment on the issue of infringement is granted. The defendants' motions for summary judgment are denied. An appropriate order will be entered.

/s/ Katharine S. Hayden

KATHARINE S. HAYDEN

United States District Judge