DEWEY & LEBOEUF LLP
1301 Avenue of the Americas
New York, New York 10019
Telephone: (212) 259-8000
Fax: (212) 259-6333
Irena Goldstein

RABINOWITZ, LUBETKIN & TULLY, LLC
293 Eisenhower Parkway, Suite 1000
Livingston, New Jersey 07039
Telephone: (973) 597-9100
Fax: (973) 597-9119
Mary Ellen Tully (MT3306)

Attorneys for Cosimo Borrelli, as Joint and Several
Liquidator of AgfaPhoto Hong Kong Limited
(In Member's Voluntary Liquidation)

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

---------------------------------------------------------- X
                                                           )
FUJIFILM CORPORATION                                       )   Civil Action
                                                           )
                                    Plaintiff,             )   No. 05cv1863 (KSH)(PS)
                                                           )
                    v.                                     )
                                                           )
JACK C. BENUN,                                             )
JAZZ PRODUCTS LLC,                                         )
POLYTECH ENTERPRISE LTD., AND                              )
POLYTECH CAMERA (SHENZHEN) CO. LTD.,                       )
                                                           )
                                    Defendants.            )
                                                           )
---------------------------------------------------------- X

**MOTION TO VACATE WRIT OF ATTACHMENT
ATTACHING PROPERTY IN THE HANDS OF THE LIQUIDATING
TRUSTEE FOR JAZZ PHOTO CORPORATION TO THE EXTENT THAT
WRIT ATTACHES TO PROPERTY OF COSIMO BORRELLI, AS JOINT
AND SEVERAL LIQUIDATOR OF AGFAPHOTO HONG KONG
<u>LIMITED (IN MEMBER'S VOLUNTARY LIQUIDATION)</u>**

As described in detail below, Cosimo Borrelli, as Joint and Several Liquidator of AgfaPhoto Hong Kong Limited (In Member's Voluntary Liquidation) ("Agfa") respectfully requests this Court enter an order vacating that certain Writ of Attachment (the "Writ") entered on November 16, 2005 to the extent the Writ orders the United States Marshal to attach property that is owned by and/or is subject to the first priority security interest of Agfa pursuant to that certain Stipulation and Order (as defined below), entered in *In re Jazz Photo Corp.*, Case No. 03-26565 (MS), by the United States Bankruptcy Court for the District of New Jersey (the "Bankruptcy Court"). Agfa offers the accompanying Declaration of Irena Goldstein (the "Goldstein Declaration") and the exhibits thereto in support of this motion.

## PRELIMINARY STATEMENT

1.      The Writ was entered by this Court in favor of Fujifilm Corporation ("Fuji") in connection with the above-captioned litigation against funds owing to Polytech Enterprise Ltd. ("Polytech") by Jazz Photo Corp. ("Jazz") on account of an administrative claim asserted by Polytech against Jazz of $3,699,981.80 (the "Administrative Claim"), which served, in part, as security for amounts owed to Agfa by Polytech of $688,743.39, as more fully described below. On November 9, 2005, Agfa objected to the entry of the Writ to the extent that it would attach to a claim, and the proceeds thereof, previously assigned to Agfa [Docket No. 81]. During the hearing on Fuji's request for the Writ, the Court instructed Agfa to make a motion for relief from the Writ to pursue its remedies.

2.      On August 14, 2007, Agfa was placed into liquidation. *See* Notice of Appointment of Liquidator, attached to the Goldstein Declaration as Exhibit A, and Notification of Appointment of Liquidator or Provisional Liquidator, attached to the Goldstein Declaration as Exhibit B. Immediately upon their appointment, Cosimo Borrelli and G. Jacqueline Fangonil

Walsh (together, the "Liquidators") were focused on investigating a number of matters and just recently have been able to investigate the amount owed by Polytech. Thereafter, the Liquidators began to take steps to marshal Agfa's assets in the United States, including seeking payment of the Administrative Claim. This Court entered the Final Order and Judgment in favor of Fuji on July 24, 2009 [Docket No. 430] (the "Final Order and Judgment"), and Fuji has not yet executed on the Writ. Therefore, Agfa's request herein remains timely and it is imperative that it is granted or the United States Marshal could seize the proceeds of the entire Administrative Claim for Fuji's benefit, leaving Agfa with no remedy but to pursue Fuji, which is no remedy at all given that Agfa is in liquidation and has limited funds.

**BACKGROUND**

3. Fuji based its request for a pre-judgment writ of attachment, an extraordinary remedy, upon the long history of disputes between Fuji, Jazz, Polytech, and certain other related parties. Agfa has no independent knowledge of these allegations and submits that it is an innocent bystander to these events.

4. Commencing in July 2004, Agfa sold film to Polytech for use in certain single use cameras manufactured and sold by Polytech. As of March 2005, Polytech owed to Agfa more than $500,000 for film delivered to, or for the benefit of Polytech, but not paid for. *See* Credit and Security Agreement (the "Security Agreement"), between Polytech and Agfa, dated as of March 24, 2005, attached to the Goldstein Declaration as Exhibit C.

5. Certain of such cameras were eventually sold by Jazz during its bankruptcy case. In or about March 2005, Polytech requested that Agfa extend it credit so that Polytech could purchase additional film from Agfa. Agfa agreed to extend such credit only if Polytech provided Agfa with security for Polytech's future and then current obligations to Agfa. Accordingly, Agfa

3

and Polytech entered into the Security Agreement, pursuant to which, among other things, Polytech pledged to Agfa the Administrative Claim to secure Polytech's obligations to Agfa. Agfa subsequently extended further credit to Polytech and is currently owed a total of $688,743.39 (the "Owed Amount").

6. Polytech gave notice to all interested parties of Agfa's security interest in the Administrative Claim in its Request for Payment of the Administrative Claim, filed in the Bankruptcy Court on April 25, 2005 [Docket No. 1007]. *See* Request for Payment attached to that certain Administrative Proof of Claim (the "Request for Payment"), attached to the Goldstein Declaration as Exhibit D (without exhibits). In this regard, the request for payment states: "Notice is hereby given that a security interest in this administrative clam has been assigned to [sic] by Polytech to AgfaPhoto Hong Kong Limited." *Id.*

7. Agfa also filed an administrative claim of US$276,000 (the "Agfa Claim") against the Jazz bankruptcy estate seeking payment for film Agfa installed in cameras sold by Jazz during its bankruptcy proceedings.[1] The Agfa Claim, if allowed, would have been paid from an escrow fund, established for the benefit of Agfa (the "Agfa Escrow") in consideration of Agfa agreeing to release the original bills of lading relating to such cameras. The bills of lading had previously been given to Agfa by Polytech to secure its outstanding obligations to Agfa. *See* Security Agreement, pp. 1-2, for a brief description of Agfa's and Polytech's relationship. The Owed Amount includes the Agfa Claim.

8. On October 31, 2005, the Liquidating Trustee, Polytech, and Agfa executed that certain Stipulation and Order: (1) Fixing Claims of Polytech, and (2) Resolving Request for

---

[1] The Liquidating Trustee of the Jazz bankruptcy estate (the "Liquidating Trustee") subsequently filed an objection to Agfa's claim. The hearing on such objection was consensually adjourned until after the resolution of the Administrative Claim because Agfa would have no claim against the estate if Polytech paid it all amounts owed.

4

Payment by Agfa Photo Hong Kong Limited of Administrative Expense Claim (the "<u>Stipulation and Order</u>"), which was filed with the Bankruptcy Court on November 1, 2005 [Docket No. 1195].

9.  The Stipulation and Order provides for the allowance of the Administrative Claim, in a compromised lower amount, and payment of the Owed Amount to Agfa in satisfaction of the Owed Amount, including the Agfa Claim, with the remaining amount to be distributed to Polytech in satisfaction of the Administrative Claim. In addition, the Stipulation and Order provides for mutual releases between Polytech and Agfa, on the one hand, and the Liquidating Trustee, on the other hand, and for release of the Agfa Escrow upon Agfa's receipt of the Owed Amount. As set forth in the Stipulation and Order, Fuji had no objection to the relief granted therein.

10. On November 4, 2005, Fuji filed that certain Order to Show Cause Why a Writ of Attachment Should Not Be Issued Against the Property of Defendant Polytech Enterprise, Ltd. [Docket No. 71] (the "<u>Order to Show Cause</u>"). On November 9, 2005, Polytech and Agfa filed responses in opposition to Fuji's application for the Writ [Docket Nos. 79 and 81]. On November 14, 2005, Agfa filed a UCC-1 Financing Statement (the "<u>Financing Statement</u>") with the New Jersey Department of Treasury evidencing its security interest in, among other things, Polytech's Administrative Claim. *See* Financing Statement, attached to the Goldstein Declaration as <u>Exhibit E</u>.

11. On November 15, 2005, following a hearing, the Court entered the Writ [Docket No. 90], which, among other things, directed the United States Marshal to

> instruct the Liquidating Trustee that: (a) all monies claimed to be owed by Jazz Photo Corporation to Polytech Enterprise, Ltd., including but not limited to the debts and obligations of Jazz Photo Corp. as asserted in the proofs claim filed by Polytech Enterprise, Ltd. on August 22, 2003 and on April 22, 2005, up to the

5

      amount of $3.5 million, have been attached by the United States Marshal; and (b) the Liquidating Trustee shall not make any payments to Polytech Enterprise Ltd., but shall instead hold any and all funds to be paid to Polytech Enterprise, Ltd. in an interest bearing account and shall not transfer those funds without the prior approval of this Court.

*See* Writ, attached to the Goldstein Declaration as <u>Exhibit F</u>.

      12.    At the hearing on November 15, 2005, the Court orally indicated that Agfa should file a motion seeking to vacate the Writ to the extent that it barred such payment. *See* Transcript at pp. 70-71, attached to the Goldstein Declaration as <u>Exhibit G</u> ("Now, Agfa has presented legal arguments going the relief that I've just granted. The monies that will be attached are not going anywhere. They are here. I am going to direct Agfa to make a motion, to specify exactly the relief, the relief that it is seeking based upon this ruling").

      13.    On July 24, 2009, the Court entered the Final Order and Judgment against the defendants in this case. Pursuant to the Final Order and Judgment, Fuji was granted a judgment of $16,191,406 against Polytech, of which certain other defendants are jointly and severally liable for $3,690,239. The value of the judgment against Polytech alone far exceeds the value of the Administrative Claim.

      14.    Agfa, Fuji, and the Liquidating Trustee for the Jazz estate have been in discussions to pay the Agfa Claim from the Agfa Escrow. In addition, Agfa is seeking recovery of the full amount it is owed from Polytech and Jazz (i.e. the Owed Amount), as clearly contemplated by the Stipulation and Order. To the extent it receives payment in full of the Agfa Claim from the Jazz liquidating estate, Agfa will modify this request accordingly.

NYA 605840.4

**ARGUMENT**

I. **The Writ of Attachment Cannot Attach to Property Which Has Been Assigned From Polytech to Agfa Prior to the Writ's Issuance**

15. Pursuant to N.J.S.A. 2A: 26-2, a prejudgment writ of attachment may, in certain circumstances, issue "against the property, real and personal, of any defendant." There is no provision in New Jersey law for the issuance of a writ of attachment against property other than that of the defendant. Case law has established that a plaintiff cannot obtain a writ of attachment against property which the defendant has assigned to another person prior to the issuance of the writ of attachment.

16. In *Russell v. Fred G. Pohl Co.,* the New Jersey Supreme Court held that a writ of attachment was of no force and effect when the property sought to be attached had previously been assigned to a third party. 80 A.2d 191, 193-94 (N.J. 1951). In that case, the plaintiff, Russell, obtained a writ of attachment upon his suit against the defendant, Fred G. Pohl, Co. *Id*. at 193. The sheriff, acting under the writ, attached for the plaintiff a claim which the defendant had against American Type Founders, Inc. *Id*. Before the writ of attachment had issued, however, the defendant had assigned his right to the American Type Founders claim to a third party, Title Guarantee and Trust Co. *Id*. Faced with these facts, the court held that the plaintiff was not entitled to the funds owing from American Type Founders, because the defendant had assigned his right to these funds to someone else: "[i]t is elementary that funds in the hands of a third person in which the defendant in attachment has no interest are not liable to attachment or garnishment." *Id.*

17. Similarly, in *Fidelity Union Trust Co. v. Guaranty Trust Co. of N.Y.,* the court held that a writ of attachment was ineffectual when the defendant had pledged his right to future distributions from an estate to a third party to secure a debt prior to the issuance of the writ of

7

attachment against such future distributions. 135 N.J. Eq. 222, 231 (N.J. Ch. 1944) ("The pledge of these assets having been made prior in point of time to the attachment the indebtedness it was given to secure must first be satisfied before the pledgee will be required to surrender the collateral to the attaching creditor").[2]

18. In this case, the Stipulation and Order acted as an assignment of certain property interests from Polytech to Agfa. *See* Stipulation and Order, p. 6 ("The Trustee be and hereby is directed and authorized to pay directly to Dewey Ballantine LLP . . . counsel for Agfa, in accordance with payment instructions to be provided by DB, the sum of $688,743.39 in full satisfaction of: (a) the Agfa Claim, and (b) the outstanding claim of Agfa against Polytech").[3] The Stipulation and Order extinguished Polytech's property interest in the Owed Amount. *See Tirgan v. Mega Life and Health Ins.,* 304 N.J. Super. 385, 390 (N.J. Super. Ct. Law Div. 1997) ("Once properly notified of the assignment, the obligor has the duty to pay the assignee, rather than the assignor"); *Employees Ins. of Wausau v. Commonwealth of Pennsylvania,* 865 A.2d 825, 830 (Pa. 2005) (an assignment "extinguishes the assignor's right to performance by the obligor and transfers that right to the assignee"). Thus, the Writ should not bar the payment of the Owed Amount from the Liquidating Trustee to Polytech.

## II. The Writ of Attachment is Subordinate to Agfa's Secured Interest in the Administrative Claim and the Proceeds Thereof

19. As stated above, the Stipulation and Order effected an assignment of Polytech's property interest in the Owed Amount from Polytech to Agfa prior to the issuance of the Writ.

---

[2] In addition to these New Jersey cases, the Supreme Court of Rhode Island held in *McFarland v. Brier*, which applied the Rhode Island version of the Uniform Commercial Code (the "UCC"), that a bank's right to foreclose on a CD it held as security for a loan was superior to a third party's writ of attachment against the same CD, because the bank was a secured creditor with a prior perfected security interest in the collateral. 850 A.2d 965, 977-78 (R.I. 2004).

[3] Dewey Ballantine LLP merged with LeBoeuf, Lamb, Greene & MacRae LLP following the Stipulation and Order. The current name of the firm is Dewey & LeBoeuf LLP.

NYA 605840.4

Thus, the Owed Amount should not have been within the scope of the Writ. However, even if the Owed Amount had not been assigned from Polytech to Agfa, Agfa's interest in the Owed Amount would be superior to Fuji's: Agfa has a security interest in the Administrative Claim, which was acquired and perfected prior to the issuance of the Writ, and as a result, Agfa's perfected interest is entitled to priority over the lien created by the Writ.

20.   Pursuant to the Security Agreement, Agfa has a security interest against the Administrative Claim and the proceeds thereof. *See* Security Agreement § 7.1. This interest is perfected pursuant to the UCC as adopted by New Jersey. Pursuant to N.J.S.A. 12A:9-203(a), "[a] security interest attaches to collateral when it becomes enforceable against the debtor with respect to the collateral, unless an agreement expressly postpones the time of attachment." Pursuant to N.J.S.A. 12A:9-203(b), an interest "is enforceable against the debtor and third parties with respect to the collateral only if:"

>   (1)  value has been given;
>
>   (2)  the debtor has rights in the collateral or the power to transfer rights in the collateral to a secured party; and
>
>   (3)  one of the following conditions is met:
>
>   >  (A) the debtor has authenticated a security agreement that provides a description of the collateral.

21.   The granting of a right to the Administrative Claim satisfies the above, as set forth in the Security Agreement executed by Polytech. *See* Security Agreement § 7.1. Value has been given by Agfa to Polytech in the form of film delivered on credit. Polytech has a right to the collateral, in this case, the Administrative Claim. Indeed, Fuji cannot claim differently when it consented to the payment of funds to Polytech on account of the Administrative Claim.

22.   Agfa's rights in the Administrative Claim were perfected prior to the issuance of the Writ. First, pursuant to N.J.S.A. 12A: 9-309(2), Agfa's rights in the Administrative Claim

were perfected upon the execution of the Security Agreement, *i.e.,* at the time of attachment.[4] Second, in an abundance of caution, Agfa filed a financing statement evidencing the Security Agreement on November 14, 2005, which also served to perfect its rights in the Administrative Claim. *See* N.J.S.A. 12A:9-310(a) ("a financing statement must be filed to perfect all security interests"); N.J.S.A. 12A:9-516(a) ("communication of a record to a filing office and tender of the filing fee or acceptance of the record by the filing office constitutes filing"). Thus, whether Agfa's rights are deemed to have been perfected on March 24, 2005 or on November 14, 2005, they were perfected prior to the issuance of the Writ on November 15, 2005.

23. Under the New Jersey UCC, a perfected security interest is entitled to priority over a later attachment. *See* N.J.S.A. 12A:9-317(a) (providing, in relevant part, "A security interest . . . is subordinate to the rights of . . . a person that becomes a lien creditor before the earlier of the time . . . the security interest . . . is perfected"); N.J.S.A. 12A:9-102(52) (defining "lien creditor" as "a creditor that has acquired a lien on the property involved by *attachment*, levy, or the like") (emphasis added). Agfa's security interest in the Administrative Claim became perfected, at the latest, upon the filing of the Financing Statement on November 14, 2005. By contrast, the Writ did not become effective until its execution. *See* N.J.S.A. 2A: 26-8

---

[4] New Jersey courts have not ruled on the scope of the UCC § 9-309(2) exception to the general rule that a financing statement is required to perfect a security interest. Other courts have chosen to use (1) a percentage of accounts test, or (2) a "casual or isolated" transaction test, which considers the circumstances surrounding the transaction. *See U.S. Claims, Inc. v. Flomenhaft & Cannata, LLC*, 519 F. Supp. 2d 515, 530 n.8 (E.D. Pa. 2006). The "casual or isolated" transaction test looks to the circumstances surrounding the transaction: "if a court finds that the transaction was not part of a regular course of commercial financing, it will not require a filing." *In re B. Hollis Knight Co.*, 605 F.2d 397, 401 (8th Cir. 1979). The "casual and isolated" transaction test is the better-reasoned test. *See Barrington v. Farmers' Home Administration (In re Barrington)*, 34 B.R. 55, 57 (Bankr. M.D. Fla. 1983) (adopting the "casual and isolated" transaction test because of its greater predictive power and greater certainty of results); *Architectural Woods, Inc. v. State of Wash.*, 88 Wash.2d 406, 410 (Wash. 1977) (adopting the "casual and isolated" transaction test because it "squares with the reality that the assignee may not know whether his assignment is a significant part of his assignor's total accounts and contract rights"); *see also* UCC § 9-309, cmt. 4 ("The purpose of paragraph (2) is to save from *ex post facto* invalidation *casual or isolated assignments*-assignments which no one would think of filing") (emphasis added). Here, Fuji was well aware of the assignment of the Administrative Claim to Agfa. Regardless, a UCC-1 Financing Statement was filed prior to the entry of the Writ.

("The attachment shall bind the attached goods and chattels, rights and credits, moneys and effects of defendant attached from the time of its execution"). Although Agfa has no knowledge as to the exact date and time that the United States Marshal executed the Writ, it was no earlier than November 15, 2005, the date that the Writ was issued.

24. Thus, Agfa's security interest in the Administrative Claim is superior to the lien created by the Writ. *See Shaw Mudge & Co. v. Sher-Mart Mfg. Co.,* 132 N.J. Super. 517, 521 (N.J. Super. Ct. App. Div. 1975) ("[A] secured creditor who has duly filed a financing statement is entitled to priority over a subsequent lien creditor seeking to levy on or otherwise claim the same collateral."); *Pinkerton's Inc. v. John A. Roebling Steel Co.,* 186 N.J. Super. 10, 13-15 (N.J. Super. Ct. Law Div. 1982) (creditor who obtained writ of execution took subject to an earlier security interest in favor of another party; earlier secured party was entitled to immediate possession of the secured property despite the writ); *Telefest, Inc. v. VU-TV, Inc.,* 591 F. Supp. 1368, 1381 (D. N.J. 1984) (secured creditor who had filed a financing statement had priority over later judicial lien creditor).

## **CONCLUSION**

For the reasons set forth above, Agfa respectfully requests that this Court vacate the Writ, to the extent that it bars Jazz from paying the Owed Amount to Agfa, order the United States Marshal to release the Owed Amount, and grant such other and further relief that is equitable and just.

Dated: New York, New York
August 3, 2009

DEWEY & LEBOEUF LLP

/s/ Irena Goldstein
Irena Goldstein
1301 Avenue of the Americas
New York, New York 10019
Telephone: (212) 259-8000
Fax: (212) 259-6333

RABINOWITZ, LUBETKIN & TULLY, LLC
293 Eisenhower Parkway, Suite 1000
Livingston, New Jersey 07039
Telephone: (973) 597-9100
Fax: (973) 597-9119
Mary Ellen Tully

Attorneys for Cosimo Borrelli, as Joint and Several Liquidator of AgfaPhoto Hong Kong Limited (In Member's Voluntary Liquidation)

NYA 605840.4