David Ward
Arthur D. Grossman
MANDELBAUM, SALSBURG, GOLD, LAZRIS &
DISCENZA, P.C.
155 Prospect Avenue
West Orange, New Jersey 07052
Tel: (973) 736-4600

Lawrence Rosenthal
Matthew W. Siegal
Angie M. Hankins
STROOCK & STROOCK & LAVAN LLP
180 Maiden Lane
New York, New York 10038
Tel: (212) 806-5400

*Attorneys for Plaintiff FUJIFILM Corporation*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
------------------------------------------------------- x
                                                        )    Case No. 05-1863 (KSH)(PS)
FUJIFILM CORPORATION                                    )
                                    Plaintiff,          )
                                                        )
                    v.                                  )
                                                        )
JACK C. BENUN                                           )
JAZZ PRODUCTS LLC,                                      )
POLYTECH ENTERPRISE LTD., and                           )
POLYTECH CAMERA (SHENZHEN) CO. LTD.,                    )
                                                        )
                                    Defendants.         )
                                                        )
------------------------------------------------------- x
```

**PLAINTIFF FUJIFILM CORPORATION'S OPPOSITION
TO DEFENDANTS' APPLICATION FOR A STAY OF
<u>ENFORCEMENT OF MONEY JUDGMENT PENDING APPEAL</u>**

# TABLE OF CONTENTS

I.      PRELIMINARY STATEMENT ........................................................................... 1

II.     BACKGROUND ................................................................................................ 4

        A.      Relevant Procedural History ............................................................... 4

        B.      The Trial and the Jury's Verdict ......................................................... 6

                1.      Defendants' Did Not Object to the Jury Verdict and Instructions that were
                        Read to the Jury ..................................................................... 6

                2.      The Verdict ............................................................................ 7

        C.      Scope of Defendants' Post Trial Papers .............................................. 7

        D.      The Final Order and Judgment ............................................................ 8

        E.      The Disappearance of Profits from Jazz Products' Predecessor Jazz Photo
                and Polytech HK ................................................................................. 9

III.    LEGAL ARGUMENT ...................................................................................... 11

        A.      A Stay of a Money Judgment Without Bond is Only Permitted Under
                Extraordinary Circumstances ........................................................... 11

                1.      The Complexity of the Collection Procedures Favors Fuji ........ 12

                2.      The Amount of Time Required to Obtain a Judgment After It is Affirmed
                        on Appeal Favors Denying the Stay Application ..................... 14

                3.      The Court should have No Confidence in the Availability of Funds to Pay
                        the Judgment ........................................................................ 15

                4.      Defendants' Inability to Pay the Judgment Favors Denying the Stay
                        Application ........................................................................... 15

                5.      Posting a Bond Will Not Endanger Other Creditors .................. 16

        B.      Defendants are not Entitled to a Stay of the Injunction ..................... 16

                1.      The Legal Standard for Staying an Injunction ......................... 17

                2.      Defendants are Unlikely to Succeed on the Merits of Their Appeal ......... 18

                        a.      Quanta did not overrule Appeal I ................................. 18
                        b.      The Court Did Not Improperly Prevent Defendants from
                                Contesting First Sale with Regard to Cameras Manufactured and
                                Sold Prior to December 12, 2003 ................................. 20
                        c.      The Court Applied the Appropriate Burden for Defendants'
                                Affirmative Defense of Permissible Repair ..................... 23
                        d.      Defendants' Are Unlikely to Succeed on its Alleged "Other Issues
                                for Appeal" ............................................................ 26

                3.      Defendants Have Not Shown that They Will Suffer Irreparable Harm ..... 27

      4.     Fuji will Suffer Injury from the Imposition of a Stay ................................. 28

      5.     The Public Interest Favors Denying the Stay ............................................. 29

IV.    CONCLUSION ...................................................................................................... 29

NY 72235596

## <u>TABLE OF AUTHORITIES</u>

### CASES

<u>Abbott Laboratories v. Andrx Pharmaceuticals, Inc.</u>,
    452 F.3d 1331 (Fed. Cir. 2006) ..................................................................................... 29

<u>American Manufacturers Mutual Insurance Co. v. American Broadcasting-Paramount</u>
    <u>Theatres, Inc.</u>,
    87 S.Ct. 1 (1966) ...................................................................................................... 11

<u>AMG National Bank v. Ries</u>,
    2008 U.S. Dist. LEXIS 44014 (E.D. Pa. June 4, 2008). .....................................15, 16

<u>Bank of Nova Scotia v. Pemberton</u>,
    964 F. Supp. 189 (D.V.I. 1997) ................................................................................11, 29

<u>Bolt v. Merrimack Pharmaceuticals, Inc.</u>,
    2005 WL 2298423 (E.D. Cal. Sept. 20, 2005) ........................................................... 17

<u>In re Capers</u>,
    347 B.R. 169 (Bankr. D.S.C. 2006) ........................................................................... 28

<u>Church & Dwight Co. v. Abbott Laboratories</u>,
    2009 WL 2230941 (D.N.J. July 23, 2009) ...................................................11, 12, 13

<u>Cipes v. Mikasa, Inc.</u>,
    404 F.Supp.2d 367 (D.Mass. 2005) ........................................................................... 17

<u>Dillon v. City of Chicago</u>,
    866 F.2d 902 (7th Cir.1988) ...................................................................................... 12

<u>Duro-Last, Inc. v. Custom Seal, Inc.</u>,
    321 F.3d 1098 (Fed. Cir. 2003) ................................................................................. 24

<u>Ensco, Inc. v. Komar Industries, Inc.</u>,
    91 F.3d 172, 1996 WL 389452 (Fed. Cir. June 28, 1996) ........................................ 23

<u>Exxon Corp. v. Esso Worker's Union, Inc.</u>,
    963 F.Supp. 58 (D.Mass. 1997) ................................................................................ 11

<u>Feldman v. Philadelphia Housing Authority</u>,
    1994 WL 46514 (E.D. Pa. Feb. 16, 1994) ...........................................................12, 13

<u>Fuji Photo Film Co. v. Benun (In re Benun)</u>,
    386 B.R. 59 (Bankr. D.N.J. 2008) ...........................................................................2, 5

iii

Fuji Photo Film Co. v. International Trade Commission,
    474 F.3d 1281 (Fed. Cir. 2007) ...................................................................... 14

Fuji Photo Film Co. v. Jazz Photo Corp.,
    394 F.3d 1368 (Fed. Cir. 2005) ................................................................14, 18

Fuji Photo Film Co. v. Jazz Photo Corp.,
    249 F. Supp. 2d 434 (D.N.J. 2003) ...........................................................19, 23

Gay Lesbian Bisexual Alliance v. Sessions,
    917 F.Supp. 1558 (M.D. Ala. 1996)................................................................ 17

Grubb v. F.D.I.C.,
    833 F.2d 222 (10th Cir.1988) ......................................................................... 11

Hilton v. Braunskill,
    481 U.S. 770 (1987) ........................................................................................ 17

Hurley v. Atlantic City Police Department,
    944 F.Supp. 371 (D.N.J. 1996)...................................................................11, 12

Jazz Photo Corp. v. International Trade Commission,
    264 F.3d 1094 (Fed. Cir. 2001) ............................................. 1, 8, 14, 18, 23

Leff v. First Horizon Home Loan,
    2007 U.S. Dist. LEXIS 65094 (D.N.J. Sept. 4, 2007) ............................... 12

LG Electronics Inc. v. Hitachi, Ltd.,
    2009 U.S. Dist. LEXIS 20457 (N.D.Cal. March 13, 2009)......................... 19

Mallinckrodt, Inc. v. Medipart, Inc.,
    976 F.2d 700 (Fed. Cir. 1992) ....................................................................... 19

Modine Manufacturing Co. v. Allen Group, Inc.,
    917 F.2d 538 (Fed. Cir. 1990) ....................................................................... 23

Olympia Equipment Leasing Co. v. Western Union Telegraph Co.,
    786 F.2d 794 (7th Cir. 1986) ......................................................................... 28

Orthokinetics, Inc. v. Safety Travel Chairs, Inc.,
    806 F.2d 1565 (Fed.Cir. 1986) ...................................................................... 24

Pharmacia Corp. v. Motor Carrier Services Corp.,
    2007 WL 2509687 (D.N.J. Aug. 29, 2007) ...............................................11, 17

Pharmacia Corp. v. Motor Carrier Services Corp.,
    2008 WL 852255 (D.N.J. Mar. 28, 2008)....................................................... 11

iv

Poplar Grove Planting and Refining Co. v. Bache Halsey Stuart, Inc.,
       600 F.2d 1189 (5th Cir. 1979) ............................................................................12, 13

PPG Industries, Inc. v. Guardian Industries Corp.,
       75 F.3d 1558 (Fed. Cir. 1996) ................................................................................. 29

Quanta Computer, Inc. v. LG Electronics, Inc.,
       128 S. Ct. 2109 (2008) ................................................................... 1, 8, 18, 19

Republic of Philippines v. Westinghouse Electric Corp.,
       949 F.2d 653 (3d Cir. 1991) ................................................................................... 17

Sanofi-Aventis U.S. LLC v. Sandoz, Inc.,
       2009 WL 1968900 (D.N.J. July 1, 2009)................................................................. 17

Schreiber v. Kellogg,
       839 F.Supp. 1157 (E.D. Pa. 1993) ......................................................................... 17

In re Sours,
       350 B.R. 261 (Bankr. E.D. Va. 2006) ..................................................................... 28

Tomasko v. Ira H. Weinstock, P.C.,
       2009 U.S. Dist. LEXIS 17334 (M.D. Pa. Mar. 6, 2009)....................................11, 12

United States v. Indiana Bonding and Surety Co.,
       625 F.2d 26 (5th Cir. 1980) .................................................................................... 27

United States v. Kurtz,
       528 F.Supp. 1113 (E.D. Pa. 1981). ........................................................................ 15

United Technologies Corp. v. Chromalloy Gas Turbine Corp.,
       189 F.3d 1338 (Fed. Cir. 1999) .......................................................................5, 26, 27

Virginia Petroleum Jobbers Assoc. v. Federal Power Commission,
       259 F.2d 921 (D.C. Cir. 1958)................................................................................ 17

Winston-Salem/Forsyth County Board of Education v. Scott,
       404 U.S. 1221 (1971) .............................................................................................. 17

## STATUTES & RULES

Federal Rule of Civil Procedure 50 ....................................................................8, 24

Federal Rule of Civil Procedure 51 ...................................................................23, 26

Federal Rule of Civil Procedure 62 .......................................................... 1, 11, 16, 17

NY 72235596

## OTHER AUTHORITIES

11 Charles Alan Wright, <u>Federal Practice and Procedure</u> § 2904 (2d ed. 2009)............................ 16

NY 72235596

## I.    PRELIMINARY STATEMENT

Plaintiff Fujifilm Corporation ("Fuji") respectfully submits this opposition to Defendants'

Application for a Stay of Enforcement of Money Judgment Pending Appeal (the "Stay

Application"). Defendants Jack C. Benun ("Benun"), Jazz Products LLC ("Jazz Products"),

Polytech Enterprise Ltd. ("Polytech HK") and Polytech Camera (Shenzhen) Co. Ltd. ("Polytech

HK (collectively, "Defendants") request a stay of the money judgment without posting a

supersedeas bond. As an initial matter, Fuji notes that Defendants moved for a stay under the

incorrect Federal Rule of Civil Procedure ("Rule"). Rule 62(c) governs stays of injunctions,

while Rule 62(d) governs stays of money damages. Nonetheless, Fuji will analyze Defendants

request under both Rules 62(c) and 62(d) because under either standard, Defendants' request

must be denied. Fuji submits the Declaration of Angie M. Hankins ("Hankins Dec.") and the

exhibits thereto in support of this opposition.

Under Rule 62(d), a stay of a money judgment is only permitted under extraordinary or

unusual circumstances, none of which exist here. Defendants' hodgepodge of arguments that

they are likely to succeed on appeal are nothing more than rehashed arguments that already have

been presented, and denied by the Court or were waived by failing to preserve them for appeal.

Furthermore, Defendants' claim of a lack of assets, especially here where there is evidence of

dissipation of assets, does not support the extraordinary or unusual circumstances necessary to

grant a stay without posting a supersedeas bond.

Even if the factors considered when granting a stay of an injunction under Rule 62(c) are

considered, all of the factors favor denying a stay. First, it is extremely unlikely that Defendants

will be successful on the merits of their appeal. Many of the "errors" that Defendants allege

were committed by the Court were in fact not errors. The Court correctly decided that Quanta

Computer, Inc. v. LG Elecs., Inc., 128 S. Ct. 2109 (2008), did not overrule the first sale rule of

Jazz Photo Corp. v. Int'l Trade Comm'n, 264 F.3d 1094 (Fed. Cir. 2001), because Quanta did

not address whether foreign sales by the patent owner or licensee exhausted the patent owner's

U.S. patent rights. The Court also correctly decided that the royalty awarded by the jury was not

1

excessive and that the lump sum should be awarded against Defendants jointly and severally as the finding of the jury was clearly supported by the testimony and evidence presented by Fuji. To do otherwise would have required the Court to usurp the province of the jury as the fact finder and substitute its own judgment.

Other of Defendants' arguments were not properly preserved for appeal and should be deemed waived. Defendants never preserved the following issues by either objecting to the Court's ruling, submitting them to the Court for a ruling or raising them in their motion for a judgment as a matter of law (JMOL): (1) the Court improperly estopped Defendants from contesting the first sale issue with regard to cameras manufactured and sold prior to December 12, 2003; (2) the Court applied the incorrect burden of proof for the affirmative defense of permissible repair; (3) Fuji's patent rights in the cameras Jazz Products purchased from the Jazz Photo Corp. ("Jazz Photo") estate were terminated; and (4) Fuji waived its right to pursue an action in this Court because it did not join the Polytech Defendants in the Benun Adversary Proceedings, Fuji Photo Film Co. v. Benun (In re Benun), 386 B.R. 59 (Bankr. D.N.J. 2008).

The Court prevented Defendants from relitigating the first sale issue with regard to cameras made and sold prior to December 12, 2003, not because of collateral estoppel, but in the interest of expediency and narrowing the trial to triable issues. Defendants were given an opportunity to present an offer of proof that less than 40 percent of the cameras were made from foreign shells. It was only after Defendants failed to provide any contradictory evidence and in fact agreed that the only issue left for the jury to determine is the percentage of cameras that were made and sold from foreign shells after 2003, that the Court ruled that 40% of the cameras made and sold before December 12, 2003 were made from foreign shells. Not only did Defendants fail to preserve the issue, they expressly waived the issue by agreeing without reserving any rights to the Court's instruction to the jury and Verdict Form that 40% of the cameras sold by Polytech HK through December 12, 2003 were made from shells of cameras not first sold in the United States.

On the issue of the burden of proof on permissible repair, Defendants never objected to and indeed endorsed the jury instruction on the issue. It is improper for Defendants to now claim that the incorrect burden was applied by the jury by resorting to the rebutted presumption of regularity after Defendants never asserted it at trial. Similarly, during trial and post trial, Defendants never argued that Fuji's patent rights in the inventory of cameras purchased from Jazz Photo were terminated and that Fuji was not allowed to proceed against the Polytech Defendants in this case. Accordingly, Defendants cannot raise these purported "errors" now.

Second, the Court should disregard Defendants' claim that they will be irreparably harmed because their reputation and business will be fatally compromised. Despite numerous past claims of financial failure and loss of business, Defendants have sold single use cameras continuously from 1995 to 2009. Benun, who at various times has represented to this Court that he went out of the business of selling refurbished single use cameras in 2005, 2006 and 2007, now concedes that he sold off his inventory in 2009. Benun Dec. at ¶ 6.

Fuji, and not Defendants, will be irreparably harmed if Fuji is delayed from enforcing the judgment. Fuji speaks from experience and not speculation. In the first District Court proceeding, Judge Hochberg found that approximately $9 million of Benun's earnings from Jazz Photo had "disappeared without a trace." Fuji Photo Film Co. v. Jazz Photo, Civil Case No. 99-2937 (FSH), Opinion & Order, n.4 (D.N.J. April 8, 2003) (Hankins Dec. Ex. 5). During the period of Jazz Photo's Bankruptcy, an initial $2,263,858 in net worth (ignoring a loan to Benun that was never repaid) at the start of the bankruptcy wasted to a negative net worth of $6,488,600 (ignoring the Benun loan and the $25 million owed by Imation Corp. and Imation S.P.A. (collectively, "Imation")). Hankins Dec. at ¶¶ 10-11 and Exs. 7-8; PX-146. When Fuji was ultimately awarded a judgment of approximately $30 million against Benun, Jazz Photo and its Hong Kong subsidiary, Jazz Photo (Hong Kong) Ltd. ("Jazz HK"), it proved impossible to collect it. Both Benun and Jazz Photo filed for bankruptcy. Similarly, Fuji spent a year and a half attempting to enforce the judgment against Jazz HK and was unable to collect any money. Hankins Dec. at ¶ 8. Fuji ultimately recovered a portion of the first judgment, but mainly from

3

the proceeds of the lawsuit by Jazz Photo against Imation in early 2005, before Benun obtained any control of that money. Hankins Dec. at ¶ 12 and Ex. 9. It is not surprising that during the pendency of the Jazz Photo bankruptcy, Polytech HK received over $25 million from Jazz Photo (not including its administrative and pre-petition claims), which has disappeared. Id. at Ex. 8. Delaying enforcement of the judgment in this matter will only permit Defendants to further dissipate any available assets. Despite Defendants' claims to the contrary, Fuji is very much interested in securing its damages.

The public interest also favors denying the Stay Application. As Defendants admit, the public interest favors the protection of patents. The expiration status of the patents is irrelevant to this determination. It is still in the public interest to punish those that have infringed unexpired patents, even if they have recently expired. Accordingly, the Stay Application must be denied.

## II.    BACKGROUND

### A.    Relevant Procedural History

On April 18, 2005, Fuji commenced the present action by filing a complaint against Defendants alleging that Defendants infringed Fuji's patents. D.E. 1. Fuji alleged that the Polytech Defendants infringed Fuji's patents since at least 2003, while Benun and Jazz Products infringed its patents since March 2005. D.E. 93. Fuji's claims of patent infringement were through the end of 2008. 5/21/2009 Pretrial Conference Tr. 16:20-17:1 (Hankins Dec. Ex. 2).

On May 4, 2007, Fuji moved for partial summary judgment on the issue of infringement. D.E. 236. Fuji also moved for summary judgment on Defendants' defenses and counterclaims including failure to join Polytech HK as a party in the Benun adversary proceeding in the Bankruptcy Court. D.E. 233. Jazz Products moved for summary judgment (1) on the double recovery issue; (2) that this action was mooted by Fuji's settlement of claims against Jazz; (3) that the sale of the Jazz Photo inventory to Jazz Products was a patent exhausting first sale; and (4) on the issue of permissible repair. D.E. 240. The Polytech Defendants moved for summary judgment on the same issues, in addition to (1) the issue of direct infringement because their

4

activities were extraterritorial; and (2) the issue of inducement infringement. D.E. 241. Benun also filed for summary judgment making the same arguments made by the other Defendants, and that (1) Fuji's post July 2, 2003 claims were waived in the Bankruptcy Court; and (2) the current case is duplicative of In re Benun, and therefore unnecessary. D.E. 248.

On May 11, 2007, Defendants moved to strike Fuji's motions for summary judgment arguing that Fuji was only permitted to file a single motion. D.E. 245. After a phone conference with the Court, the Court granted Defendants' motion to strike, and Fuji's motion for summary judgment on Defendants' defenses and counterclaims was withdrawn. D.E. 253.

On June 30, 2008, the Court granted Fuji's motion for partial summary judgment on infringement, and denied Defendants' motions for summary judgment. D.E. 309-310. In order to preserve the issues raised in their summary judgment motion, Defendants were required to present them to the jury. United Technologies Corp. v. Chromalloy Gas Turbine Corp., 189 F.3d 1338, 1344 (Fed. Cir. 1999). Having failed to do so, those issues are waived.

On March 16, 2009, Corporate Defendants moved in limine to (1) bar referencing the prior litigations and administrative actions that involved litigants other than the corporate defendants; and (2) collaterally estop Fuji from litigating whether the cameras at issue in this matter were produced by a permissible repair process. D.E. 347. On April 6, 2009, the Court had oral argument on the parties' motions in limine, and reserved ruling on the Corporate Defendants motion in limine. During that hearing, the Court ordered the parties to file offers of proof for the evidence (testimony and exhibits) that they planned to present during trial. 4/6/09 Pretrial Conference Tr. 137:20-138:3 (Hankins Dec. Ex. 1). On May 15, 2009, the parties filed offers of proof that summarized the parties' evidence. D.E. 376, 377.

During the Final Pretrial Conference on May 21, 2009, the Court granted Defendants' motion in limine by (1) finding that the doctrine of non-mutual collateral estoppel applied to the process prong of permissible repair; and (2) excluding presentation of the litigation history regarding Benun and Jazz Products' predecessor Jazz Photo. 5/21/09 Tr. 23:15-24, 30:9-24 (Hankins Dec. Ex. 2). Without objection from either side, the Court also ruled that, for the

period prior to December 12, 2003, forty percent of the cameras made and sold by Defendants were refurbished from foreign shells. Id. at 23:25-24:5. The Court noted that the parties had already stipulated to this fact. Id. at 24:6-10. Indeed, in the prior hearing Corporate Defendants' counsel admitted that the remaining issue for trial was the first sale issue for 2004 and thereafter. 4/06/2009 Pretrial Conference Tr. 82:19-21; 90:3-8  (Hankins Dec. Ex. 1).

> **B.** **The Trial and the Jury's Verdict**

After a final pretrial conference on May 21, 2009, the trial was conducted over seven (7) days from June 2-11, 2009. On June 9, 2009, Defendants only moved for JMOL to dismiss Fuji's claim that Defendants infringed Fuji patents by refurbishing Achiever cameras. D.E. 405. On June 10, 2009, after oral argument, the Court denied Defendants' JMOL motion. 6/10/09 Hearing Tr. 61:5-64:10 (Hankins Dec. Ex. 3).

> **1.** **Defendants' Did Not Object to the Jury Verdict and Instructions that were Read to the Jury**

During the week prior to the trial, the parties negotiated a Jury Verdict Form and Jury Instructions. A Joint Verdict Form was sent to the Court on May 29, 2009. A copy of the Jury Instructions, with only four competing instructions was also sent to the Court. During the evening of June 10, 2009, after the close of the evidence, this Court helped the parties agree to a Joint Verdict Form and Jury Instructions. Fuji's counsel circulated the revised Joint Verdict Form and Jury Instructions that night and Defendants' raised no objections. On the morning of June 11, 2009, this Court confirmed that the parties had resolved any objections with respect to the Verdict Form and the Jury Instructions. Counsel for the parties and Benun all confirmed that they agreed with the Verdict Form and Instructions as provided to the jury. 6/11/09 Trial Tr. 4:18-5:21 (Hankins Dec. Ex. 3). Specifically, Defendants did not object to Verdict Form paragraph no. 1, which states that in 2003, Polytech HK sold Jazz Photo 3,922,852 million infringing cameras. Defendants also did not object to Jury Instruction No. 14, on permissible repair, requiring Defendants to prove by a preponderance of the evidence, for each camera, that "Fuji's patent rights were exhausted through a first sale of the original cameras by Fuji or one of

6

its licensees in the United States, referred to as the 'First Sale' prong of the permissible repair defense." Having failed to timely object to the Verdict Form and Jury Instructions, it is too late for Defendants to attempt to disturb the jury verdict, or appeal issues based on the content of the jury instructions.

###  2.    The Verdict

On June 12, 2009, the jury found that Defendants infringed Fuji's patents and awarded Fuji damages. More specifically, the Verdict Form establishes that:

(1) From April 2003 to December 12, 2003, Polytech HK sold 3,922,852 infringing cameras to Jazz Photo (based on a Court finding) (D.E. 411 at ¶ 1);

(2) From December 13, 2003 to February 2005, Polytech HK sold 582,831 infringing cameras to Jazz Photo (id. at ¶ 2);

(3) From March 2005 to the end of 2007, Polytech HK sold 112,504 infringing cameras to Jazz Products (id. at ¶ 4);

(4) From 2005 to 2008, Jazz Products sold 142,117 infringing cameras (id. at ¶ 6);

(5) Benun induced all of Jazz Products' infringements (id. at ¶ 7);

(6) All of Defendants' infringements of Fuji's patents were willful (id. at ¶ 8); and

(7) Some of the refurbished Achiever shells that Polytech HK sold to Jazz Products infringed Re. 34,168 (the "168 Patent") (id. at ¶ 9).

Thus, the jury found that 18.7 % and not five percent of the cameras were refurbished from shells of cameras not first sold in the United States. The jury awarded a $2.00 per infringing camera royalty, resulting in a calculated verdict of $9,236,374 against Polytech HK and $284,234 against Jack Benun and Jazz Products. Id. at ¶¶ 10, 11. The jury also awarded Fuji an additional lump sum royalty payment of $2,500,000. Id. at ¶ 10(b).

### C.    Scope of Defendants' Post Trial Papers

On June 29, 2009, Fuji moved for a proposed form of judgment granting Fuji (1) damages of $2,784,234 plus prejudgment interest jointly and severally against Polytech HK, Benun and Jazz Products; (2) an additional $8,952,140 plus prejudgment interest against

7

Polytech HK; (3) enhanced damages; (4) attorney fees and costs; and (5) a permanent injunction. D.E. 416.

On the same date, Defendants filed a Motion for Post-Verdict Relief requesting a new trial on the issue of damages, or in the alternative for remittitur to reduce the royalty awarded by the jury as excessive. D.E. 417, 420. Defendants also moved for a JMOL under Rule 50 of Federal Rules of Civil Procedure on the following issues: (1) the alleged failure of Fuji to prove that any of the Achiever cameras infringed Fuji patents; (2) Defendants were entitled to a finding of noninfringement for the Achiever cameras on the basis of Fuji's settlement with Achiever; and (3) the first sale rule of <u>Jazz Photo Corp. v. Int'l Trade Comm'n</u>, 264 F.3d 1094 (Fed. Cir. 2001) ("<u>Appeal I</u>") was overruled by <u>Quanta</u>. <u>Id.</u>

Both parties filed oppositions to each other's post trial motions and replies. D.E. 421-424. During oral argument on July 16, 2009, the Court granted Fuji's motion for (1) damages of $2,784,234 plus prejudgment interest jointly and severally against Polytech HK, Benun and Jazz Products, and an additional $8,952,140 plus prejudgment interest against Polytech HK; (2) costs; and (3) a permanent injunction. However, the Court denied Fuji's motion for enhanced damages and attorney fees, and withheld ruling on Defendants' JMOL motions. On July 24, 2009, the Court entered an Opinion and Order denying Defendants' JMOL motions. D.E. 429-430.

### D.    **The Final Order and Judgment**

On July 24, 2009, the Court entered its Final Order and Judgment ("Final Judgment") awarding Fuji $16,191,406 in damages and pre-judgment interest against Polytech HK. D.E. 430 at ¶ 14. The Court granted Polytech HK a credit of $6,375,000 resulting in an ultimate award of $9,816,406 against Polytech HK. <u>Id.</u> at ¶ 6(b). The $6,375,000 was money that Fuji received from the Jazz Photo and Benun bankruptcies for infringement that occurred from April 2003 through March 1, 2005. The Court also granted Fuji damages and pre-judgment interest of $3,690,239 against Benun and Jazz Products, jointly and severally with those of Polytech HK and part of the $16,191,406 Polytech HK Judgment. <u>Id.</u> at ¶ 14.

On August 4, 2009, Defendants filed a Notice of Appeal to the Federal Circuit, and the

Stay Application.  D.E. 433, 434.

E.   **The Disappearance of Profits from Jazz**
     **Products' Predecessor Jazz Photo and Polytech HK**

In a prior litigation against Defendant Benun and two companies he controlled, Jazz

Photo and Jazz HK, Fuji received a judgment of approximately $30 million for infringement of

Fuji's patents.  Hankins Dec. Ex. 4.  At the conclusion of that trial, the defendants move to stay

enforcement of the judgment pending appeal.  In denying their request for a stay, Judge

Hochberg detailed Benun's dissipation of assets obtained from Jazz Photo.

> Under the facts of this case, Defendants' purported insolvency counsels
> against the very relief they request.  Indeed, there is little hope that Fuji's
> judgment would receive any protection during the pendency of the appeal
> in this matter absent the posting of a full supersedeas bond.  This
> particularly true given Mr. Benun's practice of causing himself to be paid
> a substantial portion of Jazz's available funds and disposing of them.  For
> instance, from the inception of this action until December 31, 2002, Jazz
> paid Mr. Benun (either directly or through JCB Consultants) nearly $8.6
> million in consulting fees and other payments, and forgave $3.3 million in
> loans that the company had made to Mr. Benun via his personal "exchange
> account."  These payments totaling $11.9 million, represent nearly 75% of
> Jazz's operating income (net of the payments to Mr. Benun) during the
> course of this lawsuit, not including over $900,000 in additional monies
> that Jazz loaned to Mr. Benun which have not been repaid to date.  Despite
> these very large payments, neither Jazz nor Mr. Benun made any provision
> whatsoever to reserve for potential royalties and other damages to Fuji that
> would have resulted (and, indeed, did result) from an [sic] verdict and
> judgment of infringement.  A financial statement which Mr. Benun
> provided to his Court dated February 28, 2003 listed the following assets
> as of that date:  cash = $28,000; a one half interest in Mr. Benun's home =
> $2,500,000; and personal effects - $17,000.  This means that
> approximately $9 million in funds and other benefits received by Mr.
> Benun directly from Jazz during the course of this lawsuit, which derived
> from infringing activities, have simply disappeared without a trace, thus
> enabling Mr. Benun to now claim lack of funds as a basis for seeking the
> extraordinary relief of a stay without a bond to secure the judgment
> pending appeal.

Hankins Dec. Ex. 5 at n.4 (citation omitted).

Judge Hochberg concluded that there was "utterly no basis to conclude that Mr. Benun

would take appropriate steps to protect his own or Jazz's assets for the benefit [of] Fuji during

9

the pendency of appeal." Id.  As noted above, Judge Hochberg's conclusion proved prophetic with Benun in Chapter 7 bankruptcy and claiming no assets, Jazz Photo ending operations with a deficit of over $6 million and Jazz HK likewise insolvent.  Hankins Dec. at ¶¶ 8, 10-11.

Indeed, in 2000-2001, while the Fuji Photo Film Co. v. Jazz Photo Corp. case was pending, Benun and his wife made contributions totaling $521,000 (among numerous other charitable contributions) to Congregation Ohel Eliyahu, which is named as a recipient of funds for the purpose of money laundering in a criminal complaint against Eliyahu Ben Haim filed in July 2009.  Hankins Dec. Exs. 12, 13.

After Judge Hochberg denied Benun and Jazz Photo's request for a stay, Jazz Photo entered bankruptcy and Benun operated the company under the auspices of the Bankruptcy Court until forced to liquidate in February 2005.  During that time period, Jazz Products funneled over $25 million to Polytech HK.  Hankins Dec. at ¶ 11, and Ex. 8.  Polytech HK now claims it is destitute without any explanation of what happened to this money.  Wong Dec. at ¶ 4.  As soon as Jazz Photo was forced to liquidate, Benun and his family formed Defendant Jazz Products (then Ribi Tech Products LLC) to continue where Jazz Photo left off.  The situation now is eerily similar to the situation faced by Judge Hochberg in 2003.

Fuji's judgment is even more perilous given the recent lawsuits filed against Defendants Jazz Products and Benun.  On May 13, 2009, Jazz Products was sued by Chicony Electronics Co. Ltd. in the Superior Court of the State of California for the County of Orange for failure to pay $260,000 for goods supplied.  Hankins Dec. Ex. 10.  The case has been transferred to the Central District of California.  Id.  On July 2, 2009, Jazz Products and Benun, inter alia, were sued by Emerson Radio Corp. in the Southern District of New York for $2,000,000 for trademark infringement and dilution, and unfair competition.  Hankins Dec. Ex. 11.  Emerson alleges that negotiations with Jazz Products broke down after Jazz Products refused to provide financial information.  Id. at ¶¶ 17-19.  Emerson also alleges that Jazz Products infringed its marks by selling products under its brand without its permission after it refused to grant Jazz Products a license.  Fuji had a similar experience with Benun.

10

III.    **LEGAL ARGUMENT**

  A. **A Stay of a Money Judgment Without Bond is
    Only Permitted Under Extraordinary Circumstances**

    The Court should not grant a stay unless a bond for the full judgment is provided.  A

party appealing from the district court usually is entitled to a stay of a money judgment only if it

posts a bond in accordance with Rule 62(d).  Pharmacia Corp. v. Motor Carrier Svs. Corp., 2008

WL 852255, at *4 (D.N.J. Mar. 28, 2008) (citing American Mfrs. Mut. Ins. Co. v. American

Broadcasting-Paramount Theatres, Inc., 87 S.Ct. 1, 3 (1966)).  Rule 62 (d) states:

> **Stay with Bond on Appeal.**  If an appeal is taken, the appellant may
> obtain a stay by supersedeas bond …. The bond may be given upon or
> after filing the notice of appeal or after obtaining the order allowing the
> appeal. The stay takes effect when the court approves the bond.

Fed. R. Civ. P. 62(d).  The central purpose of a bond is "to secure the judgment throughout the

appeal process against the possibility of the judgment debtor's insolvency."  Exxon Corp. v. Esso

Worker's Union, Inc., 963 F.Supp. 58, 60 (D.Mass. 1997) (citing Grubb v. F.D.I.C., 833 F.2d

222, 226 (10th Cir. 1988)).

    Although the Third Circuit has not ruled on the issue of whether a district court judge can

at its own discretion grant a stay without a bond or a modified bond, the predominant view is that

Rule 62(d) permits this discretion.  Church & Dwight Co. v. Abbott Labs., 2009 WL 2230941, at

*1 (D.N.J. July 23, 2009); Hurley v. Atlantic City Police Dept., 944 F.Supp. 371, 374 (D.N.J.

1996).  However, a stay without a supersedeas bond is usually only granted in exceptional

circumstances.  Church & Dwight Co., 2009 WL 2230941, at *14; Pharmacia Corp. v. Motor

Carrier Services Corp., 2007 WL 2509687, at *1 (D.N.J. Aug. 29, 2007); see also Bank of Nova

Scotia v. Pemberton, 964 F. Supp. 189, 192 (D.V.I. 1997)).  Specifically, "courts have also held

that they should only exercise this discretion 'in exceptional circumstances and where there

exists an alternative means of securing the judgment creditor's interest.'"  Church & Dwight,

2009 WL 2230941, at *14 (citing Tomasko v. Ira H. Weinstock, P.C., 2009 U.S. Dist. LEXIS

17334, at *3 (M.D. Pa. Mar. 6, 2009)).

    When determining whether to waive the posting of bond, the district court may look to

several criteria:

> (1) the complexity of the collection process; (2) the amount of time required to obtain a judgment after it is affirmed on appeal; (3) the degree of confidence that the district court has in the availability of funds to pay the judgment; (4) whether the defendant's ability to pay the judgment is so plain that the cost of a bond would be a waste of money; and (5) whether the defendant is in such a precarious financial situation that the requirement to post a bond would place other creditors of the defendant in an insecure position.

Id. (citing Tomasko, 2009 U.S. Dist. LEXIS 17334, at *3 (citations omitted); see also Hurley, 944 F.Supp. at 374 (citing Dillon v. City of Chicago, 866 F.2d 902, 904-05 (7th Cir.1988); Leff v. First Horizon Home Loan, 2007 U.S. Dist. LEXIS 65094, at *19 (D.N.J. Sept. 4, 2007). However, these factors are "not intended to act as triggers guaranteeing appellant the right to post no bond, but rather [they are] factors to determine the when and how it is appropriate to deviate from the general rule that a sufficient bond should be posted." Tomasko, 2009 U.S. Dist. LEXIS 17334, at *5.

"If a court chooses to depart from the usual requirement of a full security supersedeas bond to suspend the operation of an unconditional money judgment, it should place the burden on the moving party to objectively demonstrate the reasons for such a departure." Poplar Grove Planting and Refining Co. v. Bache Halsey Stuart, Inc., 600 F.2d 1189, 1191 (5th Cir. 1979); Feldman v. The Philadelphia Housing Auth., 1994 WL 46514, at *1 (E.D. Pa. Feb. 16, 1994). Here, Defendants have not shown that extraordinary or unusual circumstances exist to merit granting them a stay without posting a bond. Indeed, Defendants do not even propose an alternative means of securing the judgment as required by Church & Dwight. Moreover, when the factors that the Court may consider are examined, they favor denying Defendants' Stay Application.

### 1.    The Complexity of the Collection Procedures Favors Fuji

Defendants argue that complexity of the collection process suggest that a stay should be granted because "[i]mmediate steps to execute the judgment are likely to result in bankruptcy or liquidation of the corporate defendants." Application Stay at 25. In order for Defendants to

establish that this factor favors them, they must show that Fuji's collection on the judgment will not be complex. Church & Dwight Co., 2009 WL 2230941, at *16 (defendant "has not put forth any evidence that the collection of the Judgment would not be complex."). Defendants assertion sheds no light on the difficulty that Fuji will face in collecting its judgment after appeal, rather it focuses on their own plight. The fact that the corporate defendants will likely go bankrupt should Fuji enforce the judgment favors denying their request. A stay without bond increases the complexity of collecting the judgment. Poplar Grove, 600 F.2d at 1191 (judgment debtor must "objectively [demonstrate] a present financial ability to facilely respond to a money judgment and [present] to the court a financially secure plan for maintaining that same degree of solvency during the period of an appeal[.]"). The financial instability of Defendants, and the contentious litigation between the parties since 1998 favors finding that the collection process would be complex. Feldman, 1994 WL 46514, at *2. Here, Defendants admit that they are financially unstable.

Moreover, Polytech HK is a Hong Kong entity and Fuji had the unsatisfying experience of attempting to collect a judgment from a Hong Kong entity. After Fuji received its judgment in Fuji Photo Film Co. v. Jazz Photo Corp., Fuji attempted to enforce its judgment against defendant and judgment creditor Jazz HK. Hankins Dec. at ¶ 8. After hiring Hong Kong counsel, it took Fuji approximately a year and half to receive a Hong Kong judgment. Id. By the time Fuji received the Hong Kong judgment, there were no assets left in Jazz HK. Id. Should Fuji be delayed from enforcing its judgment against Polytech HK, it is extremely likely that there will be no assets left in Polytech HK. Ms. Wong already admits that the available cash on hand is small and insufficient to post the bond. Wong Dec. at ¶ 4. Defendant Polytech (Shezhen) Camera Co. has already been dismantled and it appears that Benun's current Hong Kong vehicle is an entity named Joyfame, which is run by Jessie Szeto.

It also will be difficult and complex for Fuji to collect the judgment owed by Benun and Jazz Products. Previously, Benun drained his own assets and the assets of Jazz Products' predecessor, Jazz Photo. Hankins Dec. Ex. 5 at n.4, Exs. 7-8. Defendants all claim poverty

13

despite the large sums of money that passed through their hands before and during the course of this action, and presumably are still passing through their hands in the course of Benun and Jazz Products' current business. Benun and Jazz Products are engaged in two separate litigations seeking damages of over $2,000,000. Hankins Dec. Exs. 10, 11. Therefore, aside from the attached funds of Polytech HK (which do not come close to satisfying the Judgment against it), it will be difficult for Fuji to collect its money, especially when there are likely to be two more creditors added to the pot. Accordingly, the Court should find that the complexity of the collection process favors denying Defendants' Stay Application.

### 2.    The Amount of Time Required to Obtain a Judgment After It is Affirmed on Appeal Favors Denying the Stay Application

Defendants argue that an appeal to the Federal Circuit "can be prosecuted swiftly, and the Federal Circuit will generally issue a mandate within a short time after deciding an appeal, so there would not be a significant post-appeal delay in enforcing a judgment." Stay Application at 25-26. Again, Defendants offer only their self serving assertion as support. To the contrary, the appeal from Judge Hochberg's decision in Fuji v. Jazz Photo was filed in April 2003, and the Federal Circuit took almost two years to render its decision. Fuji Photo Film Co. v. Jazz Photo Corp., 394 F.3d 1368 (Fed. Cir. 2005) ("Appeal II"). The Federal Circuit also took over two years to render a decision in Jazz Photo's appeal from the ITC's Opinion in the initial investigation, which was issued on June 19, 1999, whereas the mandate issued on November 21, 2001. Appeal I, 264 F.3d at 1094. Finally, the Federal Circuit also took approximately two years to render a decision in the appeal from the ITC opinion in second Enforcement Proceeding, which issued on January 24, 2005, and the mandate issued on March 5, 2007. Fuji Photo Film Co. v. Int'l Trade Comm'n, 474 F.3d 1281 (Fed. Cir. 2007). Thus, it is likely that an appeal from this case will take over two years.

Defendants have made no showing that if the appeal is affirmed, that there will be funds available two years from now to satisfy Fuji's judgment. As described above and below, it is highly unlikely that such funds will be available in two years. Accordingly, the time that it will

14

take to get a judgment after affirmance also ways in favor of denying the Stay Application.

**3.    The Court should have No Confidence in
the Availability of Funds to Pay the Judgment**

The Court should have zero confidence in the availability of funds to pay the judgment. By their own admission, "defendants do not have a plain ability to pay the judgment; neither do they have the financial wherewithal for a bond."  Stay Application at 26.  Moreover, the fact that Benun and Jazz Products are currently the subject of two pending lawsuits, and Polytech HK claims to be essentially out of business, indicates that there will not be any funds available to pay the judgment later if a stay is granted.  Accordingly, the Court should find that this factor favors denying a stay.

**4.    Defendants' Inability to Pay the Judgment
Favors Denying the Stay Application**

Defendants' inability to pay the judgment favors denying their stay application.  In United States v. Kurtz, the court denied defendant's request for a stay without posting a bond where defendant only offered an unsupported allegation that he is financially unable to satisfy the judgment or to post a bond, and failed to propose any alternative arrangement.  528 F.Supp. 1113, 1115 (E.D. Pa. 1981).  Similarly, in AMG Nat'l Bank v. Ries, the court refused to grant a stay without a bond to a defendant that claimed he lacked the financial means to post a bond. 2008 U.S.Dist. LEXIS 44014, at *7-8 (E.D. Pa. June 4, 2008).  The court questioned the maintenance of the status quo given the defendants accrual of legal fees in prosecuting the appeal.

> Indeed, given the defendants' assertion that he lacks the financial means to post an appropriate supersedeas bond and, we assume, his ongoing accrual of legal fees to prosecute this appeal gives us cause to question whether the status quo in this matter would be maintained pending the Third Circuit's ruling in the absence of a bond.

Id.

As mentioned above, Defendants admit that they do not have the ability to pay the judgment or post a bond.  Stay Application at 26.  Defendants fail to offer any plan to protect Fuji's judgment against Polytech HK, Benun and Jazz Products.  Furthermore, the attached

15

money is insufficient to secure Fuji's judgment because the bond or proposed security must be sufficient in amount to satisfy the judgment in full, plus interest and costs. <u>AMG Nat'l Trust Bank</u>, 2008 U.S. Dist. Lexis 44014, at *4. Accordingly, the Stay Application should be denied because Defendants are unable to pay the judgment.

### 5. Posting a Bond Will Not Endanger Other Creditors

Defendants argue that requiring the posting of a bond will endanger other secured creditors, stating only that the enforcement of the money judgment pending the prosecution of the appeal would likely result in the withdrawal of secured financing. Stay Application at 26; Benun Dec. at ¶ 8. However, Defendants make no showing of how requiring them to post a bond will endanger their creditors. While this might injure Jazz Products, it will protect its creditors. In any event, Jazz Products' factor has a secured interest in Jazz Products' assets, and is also fully protected by other security, including an apartment owned by Jessie Szeto. 6/10/09 Szeto Tr. 132:2:21; Benun Dec. Ex. A. Furthermore, Benun offers no reason why its factor would withdraw its financing as Fuji's judgment should not interfere with previous liens and liabilities. As for Benun and Polytech HK, neither identifies any secured creditors that would be endangered. Accordingly, the Stay Application should be denied because the posting of bond will not effect any secured creditors.

### B. <u>Defendants are not Entitled to a Stay of the Injunction</u>

Defendants' request for a stay of a money judgment under Fed. R. Civ. P. 62(c) (Stay Application, Section III) should be rejected as an initial matter because Rule 62(c) deals with a stay of an injunction not a money judgment. Rule 62(c) provides:

> **Injunction Pending an Appeal.** While an appeal is pending from an interlocutory order or final judgment that grants, dissolves, or denies an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights.

Fed. R. Civ. P. 62(c). Thus, Rule 62(c) only allows a court to stay, modify, restore or grant an injunction. 11 Charles Alan Wright et al., <u>Federal Practice and Procedure</u> § 2904 (2d ed. 2009).

Here, Defendants neither appeal from the injunction nor seek a stay of the injunction.

Stay Application at 2.  Indeed, Defendants argue that the fact that they would remain subject to the permanent injunction would ensure that Fuji will not suffer further harm pending appeal. Wong Dec. at ¶ 6.  Accordingly, Defendants' Stay Application should be denied based on the fact that Rule 62(c) is not applicable.  Nevertheless, Fuji will briefly address why a stay under Rule 62(c) should also be denied.

### 1.    The Legal Standard for Staying an Injunction

A stay under Rule 62(c) is considered "extraordinary relief" for which the moving party bears a "heavy burden."  Gay Lesbian Bisexual Alliance v. Sessions, 917 F. Supp. 1558, 1561 (M.D. Ala. 1996) (citing Winston-Salem/Forsyth County Bd. of Educ. v. Scott, 404 U.S. 1221, 1231 (1971)).  In determining whether to grant stay pending resolution of appeal, a court must examine four factors:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

Hilton v. Braunskill, 481 U.S. 770, 776-77 (1987); see also Republic of Philippines v. Westinghouse Elec. Corp., 949 F.2d 653, 658 (3d Cir. 1991); Sanofi-Aventis U.S. LLC v. Sandoz, Inc., 2009 WL 1968900, at *2 (D.N.J. July 1, 2009); Pharmacia, 2007 WL 2509687, at *1; Cipes v. Mikasa, Inc., 404 F. Supp. 2d 367, 370 (D.Mass. 2005).  This test is inapplicable in a stay of money judgment controlled by Rule 62(d).  Bolt v. Merrimack Pharms., Inc., 2005 WL 2298423, at *3-4 (E.D. Cal. Sept. 20, 2005); Schreiber v. Kellogg, 839 F.Supp. 1157, 1161 (E.D. Pa. 1993).

When applying the above four-prong test, the proof of one factor such as success on the merits does not outweigh the remaining prongs.  In Virginia Petroleum Jobbers Assoc. v. Federal Power Commission, the court refused to grant a stay though the petitioner had shown a probability of success on the merits because the remaining three prongs of the stay test were not met.  259 F.2d 921, 925-926 (D.C. Cir. 1958).

Here, none of the factors favors granting a stay under Rule 62(c).

### 2.    Defendants are Unlikely to Succeed on the Merits of Their Appeal

Defendants have not made a strong showing that they are likely to succeed on the merits. This Court already has rejected many of the issues that Defendants plan to appeal, while they have waived others. Fuji will briefly address each of the alleged issues that Defendants claim establish a strong likelihood of success on appeal.

### a.    Quanta did not overrule Appeal I

Defendants argue that the requirement that single use cameras only may be repaired if they were first sold in the United States under Fuji's authority has been overruled by Quanta. Stay Application at 6-7. Defendants also assert that the entire trial was predicated on the holding in Appeal I; and "it was undisputed that all of the cameras had been first sold under Fuji's authority, and that Fuji had received compensation for the value of the patented inventions, either through the purchase price (when Fuji sold the cameras) or royalties (when the cameras were sold by a Fuji licensee)." Id. at 6.

As an initial matter, the trial here was predicated on the Federal Circuit decisions in both Appeal I and Fuji Photo Film Co. v. Jazz Photo (affirmed by Appeal II). Second, all of the cameras at issue were not sold under Fuji's authority. Specifically, Achiever is not a Fuji licensee and is not entitled to sell cameras under Fuji's patents. Finally, Fuji only received royalties under the Fuji patents on cameras its licensees sold in the U.S. Those cameras that were sold abroad were either sold without Fuji's authority or under different patents not at issue in this case.

Quanta does not address the issue of whether foreign sales by the patentee (or their licensee) exhaust the patentee's U.S. patent rights. Rather, Quanta addresses the issue of whether patent exhaustion applies to method patents and whether restrictions in one license were effective to preclude exhaustion when products were sold under the license. Quanta, 128 S.Ct. at 2114. The issue in this case does not involve license restrictions on the exhaustion doctrine, but rather whether foreign sales can exhaust U.S. patent rights. Moreover, the Supreme Court does not discuss or address the territorial limits of U.S. patents. Accordingly, Quanta has no bearing

on the first sale in the U.S. rule at issue in this case, because the Supreme Court did not address the issue of whether foreign sales can exhaust U.S. patent rights.

LG Electronics Inc. v. Hitachi, Ltd., 2009 U.S. Dist. LEXIS 20457 (N.D. Cal. March 13, 2009), misapplies the law of exhaustion by focusing on the fact that the exhaustion doctrine is intended to preclude a patent holder from reaping the benefit of its U.S. patent, then suing a downstream purchaser for infringing that U.S. patent.  The judge in LG Electronics failed to consider that a U.S. patent owner obtains no benefit under its U.S. patent when it or its licensee sells its products outside the United States.  As Judge Hochberg correctly noted, when Fuji sells a patented camera in the United States, it derives a benefit from the lack of competition from infringing cameras.  However, when Fuji sells a camera in France, Spain, Japan or elsewhere, it receives no benefit from its U.S. patent, because its U.S. patent in no way limits competition anywhere except the United States.  See Fuji Photo Film Co. v. Jazz Photo Corp., 249 F. Supp. 2d 434, 450 (D.N.J. 2003).  It is precisely because foreign activities do not create liability under a U.S. patent, that they do not exhaust that U.S. patent.

Lastly, LG Electronics is based on the view that the Supreme Court in Quanta overruled, sub silentio, Mallinckrodt, Inc. v. Medipart, Inc., 976 F.2d 700, 709 (Fed. Cir. 1992), the Federal Circuit case that permits a patent owner to avoid patent exhaustion by the express terms of a license.  LG Electronics, 2009 U.S. Dist. LEXIS 20457, at *25-33.  In fact, although asked to do so, the Supreme Court did not overrule Mallinckrodt.  Instead, it based its decision on the language of the license agreement, which it concluded imposed no restriction on Intel's right to sell its microprocessors and chipsets.  Quanta, 128 S. Ct. at 2121-22.  In any event, the current case does not involve agreed to restrictions on exhaustion, but exhaustion of U.S. patents based on sales outside the U.S.  Quanta does not address the issue of whether foreign sales can exhaust U.S. patent rights and LG Electronics is neither persuasive nor controlling authority for this Court.  Accordingly, Defendants are unlikely to succeed on an appeal based on Quanta.

19

b.    **The Court Did Not Improperly Prevent Defendants from Contesting First Sale with Regard to Cameras Manufactured and Sold Prior to December 12, 2003**

Defendants' argue that they were improperly collaterally estopped from arguing that more than 60% of "cameras imported prior to December 12, 2003," were made from cameras first sold in the United States. Stay Application at 3. The Court did not apply collateral estoppel. Rather the Court precluded the parties from litigating the issue, inter alia, after Defendants failed to present sufficient evidence to the contrary prior to trial.

During the April 6, 2009 Pretrial Conference, Corporate Defendants' counsel stated numerous times that he believed that the only triable issue was the first sale issue with regard to cameras from 2004 forward. He also indicated that he was not sure that he could prove that more than 60 percent of the cameras were made from the shells of cameras first sold in the United States.

> MR. PETERSON: Let me say this, your Honor. I mean, and again I said this before, I think there's no reason to try the permissible repair issue. And if the Court were to agree that there's no reason to try the permissible repair issue, we would probably be willing to stipulate to a 40 percent of nonfirst sale.
>
> THE COURT: For what year?
>
> MR. PETERSON: For 2003. Not for 2004.

4/6/09 Pre-Trial Conference Tr. at 54:8-15 (Hankins Dec. Ex. 1).

> MR. PETERSON: Again, your Honor, remember permissible repair is one of two steps. When you ask us to stipulate no first sell, it doesn't matter if we repaired the camera. You're asking us to stipulate to the liability. Now, if the facts are such that in 2003 we can't prove a number of better than 40 percent, we might stipulate to that.

Id. at 57:2-8. Mr. Peterson reiterates one last time that the only triable issue was that of first sale after 2003:

> I don't know why we would need a trial here. But if we were going to have a trial, we can certainly narrow it down to that 2004 first sale issue.

Id. at 82:19-21.

At the conclusion of that hearing, the parties were ordered to prepare offers of proof. Defendants were given an opportunity to present an offer of proof that more than 60 percent of

20

the cameras were made from the shells of cameras first sold in the United States. Defendants'

pretrial evidence summary is silent as to the evidence they had that supported such a finding.

D.E. 376. The only evidence offered on the issue was that of Fuji in the form of Mr. Field's

collection and analysis of shells, and Mr. Bilka's subsequent analysis of those shells. D.E. 377-

4, Ex. 11 at ¶ 12-30; D.E. 377-4, Ex. 12. It was only after Defendants failed to provide any

evidence to the contrary, that the Court ruled that 40 percent of the cameras made and sold

before December 12, 2003 were made from foreign shells.

When the Court ruled, it noted that the parties had essentially agreed to stipulate to this

fact, and Mr. Peterson did not register any objection on the record.

> [THE COURT:] Now, Fuji has written a letter May 11, that both the
> corporate defendants and Fuji, were amenable to stipulating to the 60-40
> determination, which would have similarly streamlined litigation of the
> first sale issues to the post 12/12/2003 period.  I don't know if that
> stipulation still stands; does that have people intended to go into the trial?
>
> MR. ROSENTHAL:  Your Honor, nothing has changed since the letter.
>
> THE COURT:  Okay.  So accordingly at trial the sole issue in play will be
> what amount of shells after December 12, 2003 were subject to the patent
> exhausting first sale in the United States.

5/21/09 Final Pretrial Conference Tr. 24:6-18 (Hankins Ex. 2).

Thus, the Court's ruling was based on Defendants' failure to produce any evidence to the

contrary, their agreement to stipulate that 60 percent of the cameras were made from the shells of

foreign cameras and 40 percent from U.S. cameras, and a desire to streamline the trial for the

jury; but not collateral estoppel, as acknowledged by the Court:

> THE COURT:  I think that you've raised a good point, Mr. Siegal, and that
> is how we want to define the prior proceedings before Judge Stern and
> proceedings and the proceedings before me.  Certainly for purposes of its
> legal argument here having been born by the jury's royalty findings, it
> makes good lawyer-sense for the defense to argue that there's a collateral
> estoppel argument buried in there. But I remember very clearly the
> concern that I had, having read Judge Stern's long opinion and having
> been instructed by its own construction of about the difficulty he had in
> reining in both sides with the sprawl of issues that each side wanted to
> raise.  And the various permutations of the scope of trial before he finally

whittled it down. And defined what was going to be tried and then went into the proofs and his ultimate determinations on the proofs.

***

I think it is irresponsible of any judge about to start a jury trial where you are involving members of the public and using the resources of the court not to make an effort to see where we're going. And in trying to see where we were going, I asked both sides what are you going to show on these issues that each side says are still alive. Your side said permissible repair is still alive and we want to show that this is reconstruction and not permissible repair. And I said, no, because you were unable to tell me that you would do anything different in front of me than had already been done in front Judge Stern and had already been done to the ALJ before him.

Plus we saw the inexorable march through the appellate tribunal of a increasing acceptance of permissible activity in this particular product versus impermissible activity. And if you provide common sense cases and the direct result of my inquiry, which is we will not tell you anything different that is the no brainer. And I don't really think it's collateral estoppel, because I find that Judge Stern is the most brilliant jurist in the world or that there is some kind of a rule of law that requires that I'm doing that. Then I think you would have to go all into the issue of Seventh Amendment rights and bankruptcy judges and factfinders-- you didn't do that. As far as I am concerned you had nothing more to say on the issue and I was entitled to move forward and try what is triable and accept what is not going to be triable. The same thought process with respect to the 40 percent 60 percent split.

7/16/09 Post Trial Conference Tr. 42:8-44:20.

Defendants attempt to make much of Fuji's removal of Mr. Bilka from its witness list after the Court's ruling and make a Seventh Amendment argument. However, it is not a coincidence that Fuji withdrew Mr. Bilka from the witness list. His testimony was no longer necessary once the ruling was made, as Fuji noted in its Witness List and Proffers filed on May 15, 2009, prior to the Court's ruling. D.E. 377 at 4. As for Defendants' assertion that their Seventh Amendment right to a jury trial had been violated, if this was truly a concern for Defendants then they would have raised it before trial, as noted by the Court. 7/16/09 Post Trial Conference Tr. 44:14-16.

Defendants consented to a Verdict Form and Jury Instructions that reflected the 40% infringing camera ruling without preserving any objections. Defendants do not claim that the

22

Verdict Form and Instructions amount to plain error nor can they.  At the least, the failure of Defendants to object to the Verdict Form and Jury Instructions is another ground for concluding that there is no likelihood of success on this purported ground for appeal.  Fed. R. Civ. P. 51(d).

### c.      The Court Applied the Appropriate Burden for Defendants' Affirmative Defense of Permissible Repair

Defendants argue that the Court failed to apply the appropriate burden of proof on the affirmative defense of permissible repair.  Stay Application at 16.  However, Defendants' argument reads more like they disagree with the jury's factual determination than that the incorrect burden of proof was applied.  In any event, Defendants' waived this argument by not objecting to the jury instruction, the Court applied the correct burden, and the evidence presented at trial supported the jury's determination.  Failure to object to a jury instruction at trial waives any possible appeal of the issue.  Ensco, Inc. v. Komar Industries, Inc., 91 F.3d 172, 1996 WL 389452, at *1 (Fed. Cir. June 28, 1996); Modine Mfg. Co. v. Allen Group, Inc., 917 F.2d 538, 542 (Fed. Cir. 1990).  Thus, Defendants did not preserve the issue of the burden of proof on the affirmative defense of permissible repair for appeal.

Notwithstanding, the Court applied the appropriate burden of proof.  "The burden of establishing an affirmative defense is on the party raising the defense."  Appeal I, 264 F.3d at 1102.  A party raising the affirmative defense has the burden of establishing repair by a preponderance of the evidence.  Id.  Permissible repair of single use cameras requires proof that the original cameras were sold in the United States with the patentee's authorization, and the cameras were prepared using a permissible process.  Id. at 1098-99; Fuji Photo Film Co., 249 F. Supp. 2d at 441-442.

Jury Instruction No. 14 provided:

> For the purposes of this case, in order to succeed in this affirmative defense, Defendants must prove for each camera by a preponderance of the evidence, both that:
>
> 1.      Fuji's patent rights were exhausted through a first sale of the original cameras by Fuji or one of its licensees in the United States, referred to the "First Sale" prong of the permissible repair defense; and

> 2.    the evidence that the activities performed by the Defendants in processing the shell of the camera originally sold in the United States used cameras were not extensive enough to create a new camera, referred to as the "Permissible Repair Process" prong of the permissible repair defense.

Jury Instruction No. 14 properly instructed the jury as to the burden and standard for proving permissible repair for single use cameras. Thus, Defendants' claim that the Court applied the wrong burden is without merit.

Defendants are really complaining about the sufficiency of the evidence on which the jury based its ruling, relying on statements by the Court of International Trade ("CIT") concerning use of commercially available evidence and a rebuttable presumption of regularity. Stay Application at 16-20. Again, Defendants waived this complaint because they did not raise this issue in their JMOL motions. In order to preserve for appeal an objection to the sufficiency of the evidence of a jury finding, a party must file a motion for JMOL any time before the case is submitted to a jury that provides a sufficient predicate for the objection. Fed. R. Civ. P. 50(a)(2); Duro-Last, Inc. v. Custom Seal, Inc., 321 F.3d 1098, 1108 (Fed. Cir. 2003) (patentee waived right to challenge sufficiency of evidence underlying the jury verdict of obviousness because its post-verdict JMOL motion was not supported by the required pre-verdict Rule 50(a) motion on obviousness); see also Orthokinetics, Inc. v. Safety Travel Chairs, Inc., 806 F.2d 1565, 1579-80 (Fed. Cir. 1986) (pre-verdict JMOL motion on infringement does not support a post-verdict JMOL motion relating to willful infringement).

At the end of Fuji's case in chief, Defendants submitted a single JMOL motion directed to a single point dealing with the Achiever cameras. D.E. 405. Defendants did not assert in its JMOL that there was insufficient evidence from which the jury to find that Defendants did not meet its affirmative defense of permissible repair. Accordingly, Defendants have waived this issue of whether there was sufficient evidence to support the jury's finding affirmative defense of repair for appeal.

Defendants argue that their evidence that they only used shells of cameras first sold in the United States was "largely unrebutted," claiming that they could not know where a camera was

24

first sold without reliance on commercially unavailable evidence.  Unlike in the CIT, where the

Government adduced no evidence, a large part of the evidence Fuji adduced was regarding the

location of the first sale of its and its licensees' cameras.  Fuji adduced this evidence via

testimony from Toshiyuki Ogura, Joseph Vaughey, Todd Dalton, Douglas Strong and Robert

Kautsky about how to determine where Fuji, Konica and Kodak cameras were first sold.  6/3/09

Vaughey Tr. 16:15-17:8; 6/4/09 Dalton Tr. 118:13-119:3; 6/5/09 Strong Tr. 36:13-37:4

(Hankins Ex. 3); PX-700 (Ogura Dec.) at ¶¶ 22-27; PX-703 (Kautsky) 20:5-14.  Furthermore,

despite Defendants' claims that this information was proprietary, how to determine where Fuji

and its licensee's cameras were first sold was provided by Mr. Ogura in prior proceedings in this

Court in 2002, and by Messrs. Ogura, Kautsky and Strong in the ITC in 2003.  Given

Defendants' experience in the single use camera market place, their feigned ignorance of the role

of foreign language wrappers and labels on cameras at the time of first sale, rings hollow and

was properly rejected by the jury.

Finally, the evidence that Fuji put forth rebutted the presumption of regularity and that

the sampled cameras include those that had been made by shells not first sold in the United

States.  Ex. 701 (Katsura Dec.) at ¶¶ 21- 25 (identifying Jazz Products cameras PPX-107, 181,

185, 597, 985, 1018, 1019, 1061, 1049 and 1459 as cameras made from Fuji cameras not first

sold in the U.S. by Fuji); 6/5/09 Strong Tr. 43:24-44:8, 44:16-45:3, 45:10-21 (Hankins Ex. 3)

(identifying Jazz Products camera PPX-503 as a camera made from the shells of cameras

intended for sale abroad by Kodak);  PX-104A (table indicating that Jazz Products cameras PPX-

320, 321, 323, 326, 449, 503, 561, and 815 were made from Kodak cameras first sold abroad);

PX-703 (Kautsky Designations) at 23:24-9, 24:15-21, 26:6-10, 26:22-27:4, 28:16-23, 28:5-10,

30:14-20, 30:24-31:4 (testifying that Jazz Products cameras PPX-153, 154, 257, and 492 made

from Konica cameras never sold in the United States by Konica); PPX-114A (table identifying

Jazz Products cameras PPX-119, 123, 124, 134, 139, 140, 143, 150, 152-158, 160, 162, 163, 165,

166, 167, 256-259, 261, 263, 269, 271, 273, 274, 338-340, 458, 461, 466, 470, 471, 473-475,

481, 483, 489, 492, and 497 as made from Konica cameras never sold in the United States by

25

Konica).

In addition, cameras purchased in the marketplace were made from foreign origin shells. PPX-1457; 6/5/09 Strong Tr. 50:5-15 (Hankins Ex. 3).   The bottom line is that Defendants are now trying to assert standards of proof (commercial availability and presumption of regularity) that they should have argued for inclusion in Jury Instruction No. 14, but they did not. Defendants' arguments are an attempt to make an end run around their failure to raise and preserve the issue for appeal; and should be rejected.  Compare Fed. R. Civ. P. 51(d).

> **d.    Defendants' Are Unlikely to Succeed on its Alleged "Other Issues for Appeal"**

Defendants raise four remaining potential issues for appeal.  Defendants raised the first two issues, the alleged excessive nature of the royalty and lump sum payment, in their post trial briefs.  Fuji fully briefed this issue in its Opposition to Defendants' Amended Motion for Post-Verdict Relief.  D.E. 421 at 7-9, 14-20.  Nonetheless, Fuji reiterates that the jury's award was not excessive, but was in line with the evidence presented by Andrew Carter, Joseph Vaughey and Kohei Nishibe.  The jury's finding of a reasonable royalty rate of $2.00 and a lump sum payment of $2.5 million for a total verdict of $11.75 million against Polytech HK, of which $2.7 million is jointly and severally liable with Jazz Products and Benun, was supported by the evidence and was not based on speculation or guesswork.

Defendants waived the remaining two issues: Fuji had no patent rights in the cameras that Jazz Products purchased from Jazz Photo (the "Jazz inventory"), and Fuji's claim against Polytech HK was subject to dismissal because Fuji failed to join Polytech HK in the Benun adversary proceedings.

Although Defendants moved for and were denied summary judgment on the issue that the sale of the Jazz Inventory to Jazz Products was a patent exhausting sale, Defendants never preserved the issue for appeal.  "A denial of summary judgment may be appealed, even after a final judgment at trial, if the motion involved a purely legal question and the factual disputes resolved at trial do not affect the resolution of that legal question." United Technologies, 189

26

F.3d at 1344.  "A party may preserve an issue for appeal by renewing the issue at trial or by including it in memoranda of law or proposed conclusions of law."  Id.

Here, Defendants' argument regarding the Jazz inventory and patent exhaustion is not a purely a legal issue.  The issue of first sale and exhaustion were front and center at trial.  Some of the jury's findings of fact on first sale were regarding the Jazz inventory.  Defendants never renewed its motion by raising it during trial.  Moreover, Defendants did not attempt to try this issue to the jury and never sought a jury instruction on the issue.  Accordingly, Defendants' waived the issue of whether the sale of the Jazz inventory was a patent exhausting issue.

Finally, Polytech HK also waived the issue of Fuji's alleged failure to join Polytech HK in the Benun adversary proceeding.  Fuji moved for summary judgment on this very issue and Defendants moved to strike this motion, which was granted.  D.E. 233, 245, 253.  Despite never producing any evidence or filing any legal memoranda on the issue after Fuji's motion, Polytech HK now expects that they will be granted an appeal on the issue.  As in United States v. Indiana Bonding and Surety Co., Polytech HK's failure to present evidence in support of an alleged defense precludes review of the "defense" on appeal.  625 F.2d 26, 29 (5th Cir. 1980) (finding failure to present evidence in support of statute of limitations defense precludes review).

### 3.    Defendants Have Not Shown that They Will Suffer Irreparable Harm

Defendants claim that they will suffer irreparable harm.  Jazz Products' claim is based on the unsupported claim that enforcement of the judgment will cause its factor to withdraw its financing.  Stay Application at 21.  In addition, Jazz Photo made similar arguments about how the company's reputation and business would be compromised in Fuji Photo Film Co. v. Jazz Photo Corp. in 2003, yet Jazz Photo continued for a number of years until Fuji proved infringement again.  Fuji is faced again with the same arguments by another company named "Jazz," albeit Jazz Products, that picked up where Jazz Photo left off.  Even if its factor dropped Jazz Products, it is likely that Benun could continue with a new entity.  Jazz Products fails to explain why an entity found to have willfully infringed Fuji's patents should be permitted to continue in business without paying its judgment or posting a supersedeas bond.

Polytech HK offers no evidence or argument why it will be irreparably harmed other than the risk of liquidation.  Stay Application at 21.  Similarly, Benun argues that he will be forced into another bankruptcy if Fuji enforces the judgment.  Id. at 22.  However, Benun is not eligible to file for bankruptcy again until July 2, 2011.  11 U.S.C. §§ 727(a)(8), 348(a); In re Sours, 350 B.R. 261 (Bankr. E.D. Va. 2006); In re Capers, 347 B.R. 169 (Bankr. D.S.C. 2006).  In any event, the prospect of supervised reorganization, as opposed to an inevitable self-reorganization, does not justify an exemption from the requirement to fully secure a judgment.  See Olympia Equipment Leasing Co. v. Western Union Telegraph Co., 786 F.2d 794, 802-03 (7th Cir. 1986) (Easterbrook, J. concurring) ("there is little reason to think that entering the bankruptcy process generally is inferior to private restructuring in the shadow of bankruptcy law," affirming requirement for adequate alternative security).

The implication of Defendants' argument is that they have been diverting all of their profits for four years (not including the Jazz Photo years), apparently setting aside nothing to satisfy the judgment for patent infringement that Fuji might obtain in the pending patent infringement action, and now wish to be excused for at least another two years.  It should be noted that Defendants created a business based on patent infringement with full knowledge of Fuji's patents and after Benun requested and was denied a license.  The result of this Court's judgment is not "irreparable injury," but the inevitable consequence of Defendants' acts.

### 4.     Fuji will Suffer Injury from the Imposition of a Stay

Defendants contend that Fuji will not be injured because it will not walk away from this litigation empty handed and "Fuji's goal in its repeated litigation against Mr. Benun and all who deal with him has not been to secure damages."  Stay Application at 23.

It has always been Fuji's desire to protect its patent rights.  Defendants' ridiculous and unsupported claim that Fuji does not want damages is simply baseless and without merit.  If Defendants had simply stopped infringing years ago, they would not need to seek a stay.  Furthermore, Fuji's claim in the Bankruptcy Court for approximately $8.2 million was for infringement from May 20, 2003 through February 22, 2005.  Hankins Dec. Ex. 3.  This period

does not include March-May 2003 and the post February 2005 time period covered by this case. Nonetheless, the Court's Final Judgment provides Polytech HK a credit for the $6.375 million that Fuji received in the Bankruptcy Court for infringement during the May 2003-February 2005 period; even though Fuji gave $1 million to the other unsecured creditors in order to secure a settlement of Jazz Photo's litigation with Imation.  Hankins Dec. Ex. 5.

Fuji will be severely prejudiced by a stay because, by the time that it could enforce a stayed judgment it is likely that there will be nothing to enforce it against.  Moreover, Fuji will be prejudiced because it will not be permitted to pursue discovery and claims for fraudulent transfers.  The trail will go cold as time passes.  Accordingly, the Court should find that Fuji will be injured by staying the enforcement of the Final Judgment.

### 5.     The Public Interest Favors Denying the Stay

The public interest does not favor a stay.  "[T]he public interest is served neither by a court system clogged with meritless appeals nor by the waste of property which could otherwise be placed into the stream of commerce and put to use by a new owner." Nova Scotia, 964 F. Supp. at 191.  Further, there is a public interest in favor of enforcement of the patent law.  Abbott Labs. v. Andrx Pharms., Inc., 452 F.3d 1331, 1348 (Fed. Cir. 2006); PPG Indus., Inc. v. Guardian Indus. Corp., 75 F.3d 1558, 1567 (Fed. Cir. 1996).  A further stay will defeat that public interest by unduly delaying a remedy beyond the nearly three years that Fuji has already waited.  If successful, Defendants' course of conduct will become the guide to others as to how to defeat a patent owner's rights and make a mockery of the patent law, all contrary to the public interest in protecting patents enshrined in the U. S. Constitution and Federal law.

## IV.     CONCLUSION

In view of the foregoing, Defendants' Stay Application should be denied.

Date: August 24, 2009                     Respectfully submitted,


                                          MANDELBAUM, SALSBURG, GOLD, LAZRIS &
                                          DISCENZA, P.C.

                                          _____s/David A. Ward_____
                                          David Ward
                                          Arthur D. Grossman
                                          155 Prospect Avenue
                                          West Orange, New Jersey 07052
                                          Tel:  (973) 736-4600

                                          STROOCK & STROOCK & LAVAN LLP
                                          Lawrence Rosenthal
                                          Matthew W. Siegal
                                          Angie M. Hankins
                                          180 Maiden Lane
                                          New York, New York 10038
                                          Tel: (212) 806-5400
                                          Fax: (212) 806-6006


                                          *Attorneys for Plaintiff FUJIFILM Corp.*